CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Assistant Director
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246
Email: jeffrey.robins@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO LUCIANO GONZALEZ TORRES, | Case No. 3:17-CV-01840-JM-(NLS) |
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S EX PARTE EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION [DKT. 2].** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................ 1

      A.   Overview of Deferred Action and the DACA Policy ........................... 2

      B.   Factual Background .............................................................................. 5

II.   ARGUMENT ........................................................................................... 8

      A.   Standards of Review ............................................................................ 8

      B.   Plaintiff Cannot Sustain the Requirements for Preliminary Relief ........ 9

            1.  Plaintiff Cannot Demonstrate Imminent, Irreparable Harm ............. 9

            2.  Plaintiff is not Likley to Succeed on the Merits ........................... 10

                 a.  This Court Lacks Jurisdiction to Review DHS's Initiation of Removal Proceedings, and any Judicial Challenges to Removal must be Brought in a Petition for Review ......... 10

                     i.  The Court lacks jurisdiction under 8 U.S.C. § 1252(g). ............................................... ......... ..... 11

                     ii.  Amy viable claims must be channeled through Plaintiff's removal proceedings and not this Court ....................................................... ...... ..... 15

                 b.  Nothing in the Constitution or APA Establishes a Right that Constrains DHS's Exercise of Discretion ........ ......... ..... 18

                     i.  Plaintiff has no Constitutional Interest in Continued DACA or Employment Authorization ............... ..... 18

                         1.  Termination of DACA does not Infringe upon an Established Constitutional Interest .......................... ...................... .. 19

i

2.  Termination of DACA does not Infringe upon a Constitutional Interest based on an Entitlement ……….………………………20

ii.  The APA Affords Plaintiff no Actionable Interest Regarding the Termination of DACA or Employment Authorization.......................................... ……… .....23

C.    The Remaining Preliminary Injunction Factors Favor Defendants ...25

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Acura of Bellevue v. Reich*,
  90 F.3d 1403 (9th Cir. 1996) ........................................................................ 16

*Aguilar v. Immigration & Customs,*
  *Enf't*, 510 F.3d 1 (1st Cir. 2007) ........................................................ 15, 16, 23

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ........................................................................ 8

*Arizona v. United States*,
  132 S. Ct. 2492 (2012) ................................................................................... 2

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) .................................................................. 11, 13

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) .............................................................. 19, 20, 21, 22

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
  727 F.3d 917 (9th Cir. 2013) ................................................... 20, 21, 22

*Carranza*, v. I.N.S.,
  277 F.3d 65 (1st Cir. 2002) ........................................................ 12, 16, 24

*Chaudhry v. Holder*,
  705 F.3d 289 (7th Cir. 2013) .......................................................................... 2

*Chavez-Navarro v. Ashcroft*,
  57 F. App'x 349 (9th Cir. 2003) ................................................................... 12

*Chuyon Yon Hong v. Mukasey*,
  518 F.3d 1030 (9th Cir. 2008) ..................................................................... 17

*Conn. Bd. of Pardons v. Dumschat*,
  452 U.S. 458 (1981) ................................................................. 22

*Coyotl v. Kelly*,
  2017 WL 2889681 (N.D. Ga. June 12, 2017) .............................. 1

*De Mercado v. Mukasey*,
  566 F.3d 810 (9th Cir. 2009) ..................................................... 19

*Earth Island Inst. v. Carlton*,
  626 F.3d 462 (9th Cir. 2010) ....................................................... 8

*Fabian-Lopez v. Holder*,
  No. 11-71513, 540 F. App'x 760 (9th Cir. Apr. 29, 2013) ............ 12

*Flores-Panso v. Asher*,
  No. C13-1923-TSZ, 2014 WL 1338073 (W.D. Wash. Apr. 2, 2014)........... 12

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ....................................................... 9

*Gerhart v. Lake Cnty., Mont.*,
  637 F.3d 1013 (9th Cir. 2011) ................................................... 22

*Glenn v. Newman*,
  614 F.2d 467 (5th Cir. 1980) ..................................................... 20

*Goss v. Lopez*,
  419 U.S. 565 (1975) ................................................................. 20

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .................................................... 2, 10, 11, 13

*Henry Schein, Inc. v. Cook*,
  191 F. Supp. 3d 1072 (N.D. Cal. 2016)........................................ 8

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ........................................ 15, 16, 17

*Kaddoura v. Gonzales,*
  No. C06-1402 RSL, 2007 WL 1521218 (W.D. Wash. May 21, 2007)...........................20

*Leiva-Perez v. Holder,*
  640 F.3d 962 (9th Cir. 2011) ............................................................................8

*Mada-Luna v. Fitzpatrick,*
  813 F.2d 1006 (9th Cir. 1987) .........................................................................25

*Martinez v. Napolitano,*
  704 F.3d 620 (9th Cir. 2012) ...........................................................................16

*Meghrig v. KFC W., Inc.,*
  516 U.S. 479 (1996) ..........................................................................................9

*Mendez-Garcia v. Lynch,*
  840 F.3d 655 (9th Cir. 2016) ...........................................................................20

*Morales de Soto v. Lynch,*
  824 F. 3d. 822 (9th Cir. 2016) .........................................................................11

*Morrisey v. Brewer,*
  408 U.S. 471 (1972) ........................................................................................19

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................................25

*Paul v. Davis,*
  424 U.S. 693 (1976) ........................................................................................19

*Perales v. Casillas,*
  903 F.2d 1043 (5th Cir. 1990) .........................................................................20

*Perry v. Sindermann,*
  408 U.S. 593 (1972) ..................................................................................20, 21

*Pilapil v. INS,*
  424 F.2d 6 (10th Cir. 1970) .............................................................................19

*Plaza Health Labs., Inc. v. Perales*,
    878 F.2d 577 (2d Cir. 1989) ......................................................22

*Quach v. Bank of Am., Nat. Ass'n*,
    No. 12–5037 EJD, 2012 WL 4498873 (N.D. Cal. Sept.28, 2012)..............................8, 9

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ......................................................2, passim

*Rodriguez v. Sessions*,
    No. 15-72487, 2017 WL 695192 (9th Cir. Feb. 22, 2017)............................................12

*Romeiro de Silva v. Smith*,
    773 F.2d 1021 (9th Cir. 1985) ......................................................12

*Samayoa-Martinez v. Holder*,
    558 F.3d 897 (9th Cir. 2009) ......................................................13

*Senate of State of Cal. v. Mosbacher*,
    968 F.2d 974 (9th Cir. 1992) ......................................................8

*Shearer v. Bowen*,
    216 F.3d 108 (5th Cir. 2000) ......................................................20

*Sissoko v. Rocha*,
    509 F.3d 947 (9th Cir. 2007) ......................................................14

*Stanley v. Univ. of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ......................................................9

*Tefel v. Reno*,
    180 F.3d 1286 (11th Cir. 1999) ......................................................20

*Torres-Aguilar v. INS*,
    246 F.3d 1267 (9th Cir. 2001) ......................................................15

*United States v. Lee*,
    274 F.3d 485 (8th Cir. 2001) ......................................................24

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) ................................................................................. 7, 8

*Vilchiz-Soto v. Holder,*
    688 F.3d 642 (9th Cir. 2012) ........................................................................ 12

*Villa-Anguiano v. Holder,*
    727 F.3d 873 (9th Cir. 2013) ........................................................................ 23

*Wayte v. United States,*
    470 U.S. 598 (1985) ...................................................................................... 12

*Winter v. Nat'l Res. Def. Council,*
    555 U.S. 7 (2008) ............................................................................................ 8

*WJA Realty Ltd. P'ship v. Nelson,*
    708 F. Supp. 1268 (S.D. Fla. 1989) .............................................................. 19

*Wong v. United States,*
    373 F.3d 952 (9th Cir. 2004) ........................................................................ 14

*Zixiang Li v. Kerry,*
    710 F.3d 995 (9th Cir. 2013) ........................................................................ 14

## **STATUTES**

5 U.S.C. § 701(a)(2) ......................................................................................... 10

5 U.S.C. § 702 .................................................................................................. 10

5 U.S.C. § 704 .................................................................................................. 10

5 U.S.C. § 706(2)(A) ........................................................................................ 10

5 U.S.C. § 706(2)(D) ........................................................................................ 10

5 U.S.C. § 706(a)(1) ......................................................................................... 14

8 U.S.C. § 1103(a)(1) .......................................................................................... 2

8 U.S.C. § 1182(a) ...................................................................................................... 2

8 U.S.C. § 1182(a)(6)(A)(i) ...................................................................................... 7

8 U.S.C. § 1182(a)(6)(E)(i) ....................................................................................... 6

8 U.S.C. § 1227(a) ...................................................................................................... 2

8 U.S.C. § 1229a ...................................................................................................... 11

8 U.S.C. § 1229(a) .................................................................................................... 11

8 U.S.C. § 1252 ........................................................................................................ 14

8 U.S.C. § 1252(g) ......................................................................................... 1, passim

8 U.S.C. § 1252(a)(2)(B)(ii) ...................................................................................... 1

8 U.S.C. § 1252(a)(5) .................................................................................... 15, 16, 17

8 U.S.C. § 1252(b)(9) .................................................................................... 15, 16, 17

8 U.S.C. § 1324(a)(1)(A)(iii) ...................................................................................... 6

## **REGULATIONS**

8 C.F.R. § 239.1(a) ................................................................................................... 23

8 C.F.R. § 274a.12(c)(14) ........................................................................................... 2

8 C.F.R. § 274a.14(a)(1)(ii) ...................................................................................... 23

8 C.F.R. § 274a.14(a)(2) ........................................................................................... 23

## **OTHER AUTHORITIES**

*California Practice Guide:*
    *Federal Civil Procedure Before Trial* § 13:95 (2010) ................................. 8, 9

## I.      INTRODUCTION

Plaintiff Alberto Luciano Gonzalez Torres, ("Plaintiff" or "Mr. Gonzalez") seeks the extraordinary remedy from this Court of reinstating the DACA that was previously terminated sixteen months ago so he may again seek a favorable exercise of the Government's prosecutorial discretion. Not only is Plaintiff's motion for a restraining order an emergency of his own making, but the relief he seeks requires this Court to reject decades of precedent to recognize alleged rights and privileges that have never existed for Plaintiff and similarly situated individuals.

Accordingly, Plaintiff cannot prevail on his emergency motion for a temporary restraining order or preliminary injunction because he is not likely to succeed in obtaining review of the Department of Homeland Security's ("DHS") discretionary decisions to issue a Notice to Appear to place him in removal proceedings, and thereby automatically terminate his DACA, related employment authorization, and other alleged ancillary benefits.

Throughout his Complaint, Plaintiff places substantial and repeated, but misplaced, reliance on *Coyotl v. Kelly*, 2017 WL 2889681 (N.D. Ga. June 12, 2017). See Dkt. 2-8, Pl.'s Ex. E. *Coyotl* was both wrongly decided and distinguishable. First, the *Coyotl* court never explained why the jurisdiction-limiting language of 8 U.S.C. § 1252(g) relates solely to the review of discretionary administrative actions. *See id.* at 8-10. *Coyotl* appears to confuse Section 1252(g) with 8 U.S.C. § 1252(a)(2)(B)(ii), which bars judicial review only of certain discretionary determinations. *See id.* at 8-11. *Coyotl* is not, therefore, persuasive on the meaning of 8 U.S.C. § 1252(g). Second, *Coyotl* is factually and procedurally distinguishable. In that case, the termination of DACA did not take place via the issuance of a Notice to Appear ("NTA"). But, as discussed below, Plaintiff's DACA was automatically terminated by the issuance of an NTA, a process squarely supported by relevant procedures.

## A.    Overview of Deferred Action and the DACA Policy

The Immigration and Nationality Act ("INA") charges the Secretary of Homeland Security "with the administration and enforcement" of the INA and "all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Individuals are removable if, *inter alia*, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012); *see* 8 U.S.C. §§ 1182(a), 1227(a). The federal government cannot practicably remove every removable alien. Rather, "[a] principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 132 S. Ct. at 2499. DHS, "as an initial matter, must decide whether it makes sense to pursue removal at all." *Id.* "At each stage the Executive has discretion to abandon the endeavor." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*"). Like other agencies exercising enforcement discretion, DHS must balance a number of factors that are within its expertise. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Deferred action is "a regular practice" in which the Secretary exercises his discretion "for humanitarian reasons or simply for [his] own convenience," to notify an alien of a non-binding decision to forbear from seeking his removal for a designated period. *See AADC*, 525 U.S. at 483-84; 8 C.F.R. § 274a.12(c)(14) ("an act of administrative convenience to the government which gives some cases lower priority"). Through "[t]his commendable exercise in administrative discretion, developed without express statutory authorization," *AADC*, 525 U.S. at 484 (citations omitted), a removable individual may remain present in the United States so long as DHS continues to forbear.

Deferred action does not confer lawful immigration status or provide any defense to removal. *Cf. Chaudhry v. Holder*, 705 F.3d 289, 292 (7th Cir. 2013) (discussing the difference between "unlawful presence" and "unlawful status" as two distinct concepts).

An individual with deferred action remains removable at any time, and DHS has the discretion to revoke deferred action unilaterally. *See AADC*, 525 U.S. at 484-85.

On June 15, 2012, DHS issued a memorandum entitled, "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" ("DACA Memo"). *See* Dkt. No. 2-5, Pl.'s Ex. B. That memorandum outlines a policy known as Deferred Action for Childhood Arrivals ("DACA") that is available to a certain subset of individuals unlawfully present in this country. The DACA Memo states, "[t]his memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." *Id*. at 3. The memo does not address the topics of arrest by DHS or the grounds that DHS will consider in terminating deferred action.

In mid-August 2012, USCIS published on its website a webpage entitled, "Frequently Asked Questions," which is now archived on the USCIS webpage. *See* Dkt. No. 2-11, Pl.'s Ex. H. These FAQs provide guidance on the DACA policy and state, "DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." *Id*. at Q:27. The FAQs also explain that the phrase "national security or public safety threat" includes but is not limited to "gang membership, participation in criminal activities, or participation in activities that threaten the United States." *See id.* at Q:65. The Form I-821D, entitled, "Instructions for Consideration of Deferred Action for Childhood Arrivals" states, "[i]ndividuals who receive deferred action will not be placed into removal proceedings or removed from the United States for a specified period of time, unless the Department of Homeland Security (DHS) chooses to terminate the deferral." Exhibit A, Form I-821D Instructions.

DHS has provided procedural guidance for terminating deferred action in three circumstances, one of which includes issuing a Notice of Intent to Terminate ("NOIT") and providing a chance for a DACA recipient to respond, and two in which such notice

3:17-CV-01840-JM-(NLS)

and an opportunity to respond is not required. *See* Dk.t No. 2-9, Pl.'s Ex. F, U.S. Department of Homeland Security, National Standard Operating Procedures, Deferred Action for Childhood Arrivals ("SOP") (Aug. 28, 2013); Exhibit B, DACA SOP Appendix I (March 1, 2016).

Most relevant here is the circumstance wherein a component of DHS, including U.S. Immigration and Customs Enforcement ("ICE") or U.S. Customs and Border Protection ("CBP"), issues an NTA that commences removal proceedings once filed with an immigration court. CBP or ICE may issue an NTA if the facts and circumstances available at the time an alien is encountered counsel against the continuation of deferred action, including where there is a criminal offense or public safety concern presented. Moreover, USCIS can refer individuals for removal after termination of DACA if USCIS becomes aware of a disqualifying criminal offense or public safety concern deemed to be an Egregious Public Safety (EPS) issue. USCIS's November 7, 2011, Policy Memorandum identified shared NTA authority between USCIS, ICE, and CBP as a means of ensuring consistency in enforcement. *See* Dkt. No. 2-10, Pl.'s Ex. G. Nothing in that memorandum limits CBP or ICE from exercising their authority to issue an NTA. Rather, pursuant to the DACA SOP and Appendix I, the issuance of an NTA automatically terminates DACA, with no additional notice or opportunity to respond. *See* Pl.'s Ex. F; Def.'s Ex. B. USCIS then generally sends a "Notice of Action" to the individual informing him that his deferred action and employment authorization terminated automatically as of the date the NTA was issued. *See* Def.'s Ex. B. This "Notice of Action" serves an administrative purpose to inform the DACA recipient that his DACA and employment authorization was already automatically terminated due to issuance of an NTA. The Notice of Action does not itself effectuate the termination of DACA and employment authorization.

On September 5, 2017, DHS announced a plan to end the DACA policy in an orderly fashion. *See* "Memorandum on Rescission of Deferred Action for Child Arrivals"

3:17-CV-01840-JM-(NLS)

from Elaine C. Duke, Acting Secretary of Homeland Security, to ICE, CBP, and USCIS (Sept. 5, 2017) ("Duke Memo"). *See* Dkt. 1 at ¶ 21. The memorandum, *inter alia,* provides that DHS will "adjudicate – on an individual, case by case basis – properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents . . . from *current* beneficiaries whose benefits will expire between the date of this memorandum and March 5, 2018 that have been accepted by the Department as of October 5, 2017." *Id.* (emphasis added).

**B.      Factual Background**

Plaintiff alleges he first requested deferred action and employment authorization pursuant to DACA in early 2013. Dkt. No. 2-1 at 6. He was granted deferred action and work authorization. *Id.*; Dkt. 2-12, Pl.'s Ex. I. In 2014, Plaintiff requested renewal of DACA and was once again granted deferred action and employment authorization, effective through December 22, 2017. *Id.* at 6-7; Dkt. No. 2-13, Pl.'s Ex. J. The approval letter states in relevant part, that "[d]eferred action does not confer or alter any immigration status" and that "[u]nless terminated, this decision to defer removal action will remain in effect for 2 years from the date of this notice," although the expiration of the notice is three years after issuance. Dkt. No. 2-13. The notice also advises that "[s]ubsequent criminal activity after your case has been deferred is likely to result in termination of your deferred action." *Id.*

Plaintiff alleges the following: on May 6, 2016, he was taking care of an acquaintance's dogs at that acquaintance's house when police knocked on the door around 4:00 p.m. *See* Dkt. 2-19 ¶¶ 9-11. Plaintiff refused permission for the police to enter the house, asked for a warrant, and asserts that the police did not produce a warrant and stopped talking to him. *Id.* ¶ 11. At 5:00 p.m., a man Plaintiff did not recognize said he was the owner of the house and asked Plaintiff to exit – Plaintiff complied. *Id.* ¶ 12-14. Upon leaving the house, Plaintiff was stopped by police; he told the police that he was a DACA recipient, they verified his documents, asked him some questions, and arrested

him. *Id.* ¶ 14-16. During this encounter, Plaintiff claims that he "sat handcuffed on the front porch for one or two minutes, unable to see or hear anything that happened inside the house . . . . I did not see or hear [the officer] speak to anyone who went inside the house." *Id.* ¶ 17.

Defendants' narrative is similar to Plaintiff's, absent Plaintiff's omissions. First, Defendants identify that they were investigating an ongoing human smuggling operation and had received information that human smuggling had taken place in the morning at the same house where Defendants found Plaintiff later the same day. *See* Exhibit C.2 at 2, Record of Deportable/Inadmissible Alien (I-213), Report of Investigation (G-166) and related documents pertaining to Plaintiff and his arrest on May 6, 2016. Defendants' narrative also comports with Plaintiff's retelling of their arrival at the house on the afternoon of May 6; however, Defendants made specific note that "Gonzalez appeared visibly shaken. When Gonzalez spoke he did so stuttering and it appeared that he had dry mouth, consistent with someone who is nervous." *Id.* at 3. Defendants' narrative similarly reports that Plaintiff left the house when asked by the landlord, and reports Plaintiff's story that he was at the residence to look after two dogs, did not have the key to the property, and that he was headed to work and was not responsible for anything inside the house. *Id.* at 3. At this same time, however, Defendants also report that they obtained a ladder from the property owner, identified twelve individuals hiding in the attic of the house, placed those individuals under arrest for being illegally present in the United States, and placed Plaintiff and another individual under arrest for harboring illegal aliens. *Id.* at 3-4.[1]

---

[1] 8 U.S.C. § 1324(a)(1)(A)(iii) criminalizes the conduct of those who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation." 8 U.S.C. § 1182(a)(6)(E)(i) states that "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible."

Notably, three of those individuals found in the attic specifically identified Plaintiff as having a role in their concealment in the attic of the house. *See* Exhibit C.3 at 9, Records of Deportable/Inadmissible Alien (I-213) pertaining to other individuals arrested with Plaintiff on May 6, 2016 (identifying two individuals "who lead [sic] the group to a room and instructed them to stay there," "instructed them to go into the attic and hide," and who identified Plaintiff as one of those individuals in a six-pack photographic line up); *id.* at 14 (identifying Plaintiff and his friend through two photographic lineups as the "stash house care-takers," and stating "that [Plaintiff] instructed all of [the] individuals at the house to enter the attic"); *id.* at 34 (identifying Plaintiff and his friend through two photographic lineups as the "stash house care-takers).

On May 7, 2016, CBP issued Plaintiff an NTA charging him as inadmissible to the United States based on his presence without admission or parole pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *See* Dkt. 2-16, Pl.'s Ex. M. That same day, Plaintiff requested that an immigration judge review his custody determination. *See* Exhibit C.1, Notice to Appear Served on Immigration Court. The NTA was served on the immigration court on May 18, 2016. *Id.* at 1. An immigration judge held a custody hearing on June 1, 2016, and granted Plaintiff release from immigration detention on $5,000 bond. *See* Dkt. 2-15, Pl.'s Ex. L. Plaintiff was released from custody on June 3, 2016. *See* Dkt. 2-1 at 9.

On September 11, 2017, Plaintiff filed a Complaint seeking an order restoring his DACA and employment authorization, and requiring Defendants to provide him with a further explanation for its decision and an opportunity to respond. *See* Dkt. No. 1. That same day, Plaintiff filed a motion for a temporary restraining order and/or preliminary injunction seeking to enjoin Defendants' termination of his DACA so that he could seek renewal of DACA prior to the October 5, 2017, date established for certain DACA recipients to renew their requests as part of the winding down of the DACA policy. *See* Dkt. No. 2.

3:17-CV-01840-JM-(NLS)

## II.   ARGUMENT

### A.   Standards of Review

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). As a result, it is generally inappropriate at the "preliminary-injunction stage to give a final judgment on the merits." *Id*.; *see Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992) (holding that "judgment on the merits in the guise of preliminary relief is a highly inappropriate result").

The applicable legal standard for a motion for a temporary restraining order is the same as that for a motion for a preliminary injunction. *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076 (N.D. Cal. 2016). An injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." As the Supreme Court has held, a plaintiff seeking a preliminary injunction "must establish" that: (1) it is likely to succeed on the merits of its claims; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008). Preliminary injunctive relief is an extraordinary remedy never awarded as of right, *id*. at 20, and the party seeking such relief bears the burden of establishing the prerequisites to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

Alternatively, a party must show "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," as well as a likelihood of irreparable harm, and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Showing "serious questions going to the merits" requires a plaintiff to demonstrate a "substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011).

When a plaintiff seeks an ex parte temporary restraining order, courts also consider the imminence of the alleged irreparable injury, and reject such relief when the

emergency is of the plaintiff's own making. *See, e.g., Quach v. Bank of Am., Nat. Ass'n*, No. 12–5037 EJD, 2012 WL 4498873, at *4 (N.D. Cal. Sept.28, 2012) (finding that an ex parte TRO to enjoin a foreclosure sale was not justified where plaintiffs were aware for months of the potential trustee's sale); William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial* § 13:95 (2010) ("An important factor will be whether the applicant could have sought relief earlier by a motion for preliminary injunction, avoiding the necessity for a last-minute TRO. Delay in seeking relief may be evidence of laches . . . or negate the alleged threat of 'immediate' irreparable injury . . . . The court has discretion to deny the application on either ground").

Finally, to the extent that Plaintiff seeks an injunction that "orders a responsible party to 'take action'," *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996), it is a mandatory injunction. When granting mandatory injunctive relief, "courts should be extremely cautious" and will apply a heightened standard in reviewing whether a plaintiff has established a basis for injunctive relief. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (internal citations omitted). Mandatory injunctions "go[ ] well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Id.* at 1320 (internal citations omitted). In a mandatory injunction request, a moving party "must establish that the law and facts *clearly favor* [their] position, not simply that [they] [are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

### B.   Plaintiff Cannot Sustain the Requirements for Preliminary Relief.

### 1.   Plaintiff Cannot Demonstrate Imminent, Irreparable Harm.

The harm that Plaintiff alleges in support of his emergency motion arises from the alleged loss of opportunity to request renewal of his DACA if the Court does not reinstate his previously terminated DACA before October 5, 2017. Dkt. No. 2-1 at 1, 24. The Court should deny Plaintiff's motion at the outset because the imminence of the harm Plaintiff cites is of his own making. *See, e.g., Quach*, 2012 WL 4498873, at *4. Defendants terminated Plaintiff's DACA sixteen months ago. While the winding down of the DACA

policy could impact Plaintiff if he still had DACA, Plaintiff's failure to raise this action to date is the only reason there is now any urgency to his claim in this Court.

While Plaintiff may argue that he could not have foreseen the wind-down of DACA until it was announced on September 5, the fact that he did not move for reinstatement of DACA, and of the benefits ancillary to it, for sixteen months casts doubt on his claim of harm if he cannot renew his DACA after October 5, 2017.

## 2.    Plaintiff is not Likely to Succeed on the Merits.

Whether viewed as a preliminary or permanent injunction, the Court cannot grant Plaintiff relief because he cannot succeed on the merits of his claims. First, this Court lacks jurisdiction to review Plaintiff's challenge to DHS's discretionary determination to issue Plaintiff a Notice to Appear ("NTA") in removal proceedings, which had the result of terminating his DACA. Additionally, nothing in the APA or constitutional jurisprudence establishes a right to review or constrain DHS's exercise of discretion or to grant Plaintiff procedural rights other than those available to him through his removal proceedings.

### a.    This Court Lacks Jurisdiction to Review DHS's Initiation Removal Proceedings, and any Judicial Challenges to Removal Must be Brought in a Petition for Review.

The APA permits persons aggrieved by final agency action to obtain judicial review in federal court where "there is no other adequate remedy in a court." *See* 5 §§ U.S.C. 702, 704. A reviewing court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). The APA also precludes judicial review of agency decisions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In *Heckler v. Chaney*, the Supreme Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." 470 U.S. 821, 832 (1985).

Individual DACA decisions fall squarely within that category of agency discretion. A decision to defer action is committed to agency discretion by law because notifying an

alien that DHS has decided to forbear from removing him for a designated period is an exercise of prosecutorial discretion, and a court has no meaningful standard against which to judge the agency's exercise of discretion to forbear from enforcement for that period. *See Heckler*, 470 F.3d at 830; *see also Morales de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016) (noting that "the exercise of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to judicial intervention"); *Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) (explaining that "[i]n making immigration enforcement decisions, the executive considers a variety of factors"), *cert. denied*, 136 S. Ct. 900, (2016), *reh'g denied*, 136 S. Ct. 1250 (2016).

Here, Plaintiff cannot establish any likelihood of success on the merits. The INA specifically precludes review of the actions that Plaintiff challenges – the discretionary decision to issue an NTA and terminate Plaintiff's DACA, the effects of that decision on Plaintiff's removal proceedings, and the impact on ancillary benefits. Moreover, all of the actions challenged are discretionary actions for which there is no law to apply.

### i.   The Court lacks jurisdiction under 8 U.S.C. § 1252(g).

The issuance of an NTA to an alien is a necessary predicate step to commencing removal proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1229(a). Through the INA, as amended by the REAL ID Act of 2005 and codified at 8 U.S.C. § 1252(g), Congress explicitly precluded judicial review of any challenge arising from any decision or action to commence removal proceedings. That statute states, in relevant part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

3:17-CV-01840-JM-(NLS)

8 U.S.C. § 1252(g).[2] The Supreme Court explained that § 1252(g) was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.

Applying 8 U.S.C. § 1252(g), the Ninth Circuit has specifically held there is no subject matter jurisdiction to review a decision to grant DACA. *See, e.g., Vilchiz-Soto v. Holder*, 688 F.3d 642, 644 (9th Cir. 2012) ("[W]e lack jurisdiction to review petitioners' contention that the agency abused its discretion in denying the motion to reopen to seek prosecutorial discretion based on the recent order of President Obama."); *Rodriguez v. Sessions*, No. 15-72487, 2017 WL 695192, at *1 (9th Cir. Feb. 22, 2017); *Fabian-Lopez v. Holder*, No. 11-71513, 540 F. App'x 760, 761 n.2 (9th Cir. Apr. 29, 2013); *cf. Flores-Panso v. Asher*, No. C13-1923-TSZ, 2014 WL 1338073, at *3 (W.D. Wash. Apr. 2, 2014) (adopting recommendation that district courts lack jurisdiction over a claim that a stay of removal is warranted for a petitioner to seek DACA).[3]

This precedent applies to the present case and precludes judicial review of the decision to issue an NTA, which terminated Plaintiff's DACA, and which was a predicate step to commencing removal proceedings. *See, e.g., Samayoa-Martinez v. Holder*, 558 F.3d 897, 901-02 (9th Cir. 2009) ("Logically, an alien cannot be placed in formal proceedings until those proceedings have been commenced with the filing of the NTA.").

---

[2] For example, courts lack jurisdiction to review the timing of the commencement of removal proceedings. *See Chavez-Navarro v. Ashcroft*, 57 F. App'x 349 (9th Cir. 2003). Moreover, "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488, 491

[3] This authority is consistent with earlier case law interpreting the 1981 Operating Instructions, a previous policy that provided guidelines for the exercise of deferred action. That authority concluded that district courts lack jurisdiction to review the district director's decision not to recommend deferred action. *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985); *see also Carranza, v. I.N.S.*, 277 F.3d 65, 72 (1st Cir. 2002) (supporting "general proscription against judicial review of *any* aspect" of prosecutorial deliberations) (citing *Wayte v. United States*, 470 U.S. 598, 607-8 (1985)).

Plaintiff may contend that the present case is distinguishable from these earlier cases because it involves the Government's decision to issue an NTA, and thereby terminate DACA, rather than a determination as to whether an individual is considered for DACA in the first place. But nothing in the language of 8 U.S.C. § 1252(g) supports such a distinction and both decisions are similar in the relevant respect – they both involve the exercise of prosecutorial discretion. Congress had no reason to preclude judicial review of the favorable exercise of prosecutorial discretion (where individuals self-select whether to request DACA in light of agency guidelines) while permitting judicial review of an agency's decision to issue an NTA so that it may commence removal proceedings and thereby terminate DACA (where the agency weighs competing factors and allocates its resources). *See Heckler*, 470 U.S. at 831 (discussing the Executive's discretion to spend resources on "this violation or another"); *Arpaio*, 797 F.3d at 16, 24 ("Even after they are approved for deferred action . . . beneficiaries are subject to the Department's overall enforcement priorities"). If anything, the decision to issue an NTA, which results in termination of DACA, is more closely connected with the central purpose of 8 U.S.C. § 1252(g) – to prevent "judicial constraints on prosecutorial discretion." *See AADC*, 525 U.S. at 485 n.9. Thus, decisions to issue an NTA and thereby terminate DACA are even further outside the scope of judicial review than determinations of whether to grant DACA in the first place.

Additionally, the Court should reject, as contrary to 8 U.S.C. § 1252(g), Plaintiff's contention that his case is distinguishable from Ninth Circuit case law because he is challenging the Government's decision-making process rather than the final decision itself. Section 1252(g) is not limited to claims arising from the adjudication of cases. It broadly precludes judicial review of "cause[s] or claim[s]" that arise from the decision "or action" to "commence proceedings" against any alien. *See, e.g., Sissoko v. Rocha*, 509 F.3d 947, 948-50 (9th Cir. 2007) (finding claim of money damages arose from decision or action to commence removal proceedings and was, thus, barred by 8 U.S.C.

§ 1252(g)).[4] To hold otherwise would render 8 U.S.C. § 1252(g) a dead letter because any alien could seek to enjoin or otherwise challenge the commencement of removal proceedings through this type of creative pleading. Lastly, Plaintiff's argument that his claims under the APA are not barred by 8 U.S.C. § 1252(g) because they challenge nondiscretionary rather than discretionary duties necessarily fails because 8 U.S.C. § 1252(g) does not distinguish between discretionary and nondiscretionary duties.[5] *See Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (rejecting contention that § 1252(g) applies only to discretionary decisions of the Secretary, emphasizing that § 1252(g), by its plain language, "makes no distinction between discretionary and nondiscretionary decisions"); *see also Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th

---

[4] In *Sissoko*, the Ninth Circuit held that because the plaintiff's detention arose from the decision to commence removal proceedings, *Bivens* jurisdiction was barred by 8 U.S.C. § 1252(g). *Sissoko*, 509 F.3d at 949. The court distinguished between these types of claims and those raised in an earlier Ninth Circuit case discussing 8 U.S.C. § 1252(g), *Wong v. United States*, 373 F.3d 952 (9th Cir. 2004). *Id*. In *Wong*, the plaintiff's counsel expressly disclaimed any challenge to the execution of removal and explained that her claims only implicated "actions other than that removal, or the commencement of proceedings . . ." 373 F.3d at 964 (emphasis original). Thus, the claims at issue in *Wong* did not implicate the agency's prosecutorial discretion and did not pose a threat of "obstruction of the institution of removal proceedings or the execution of removal orders . . ." *Id*. at 970. *Wong* is clearly distinguishable from the present case in which Plaintiff is directly challenging the decision to issue an NTA and thereby terminate DACA, which predicated the commencement of removal proceedings. As a result, his claims are barred by 8 U.S.C. § 1252(g). *See Sissoko*, 509 F.3d at 949.

[5] To be sure, in other contexts, courts distinguish between discretionary and nondiscretionary duties. For example, under 5 U.S.C. § 706(a)(1), a plaintiff can assert an APA claim (akin to a mandamus claim) seeking to compel an agency to perform a duty but only if it is a duty compelled by statute (that is, a matter over which the agency has no discretion). *See, e.g., Zixiang Li v. Kerry*, 710 F.3d 995, 1003 (9th Cir. 2013). Similarly, there are additional jurisdictional bars contained in different subsections of 8 U.S.C. § 1252. *See AADC*, 525 U.S. at 486 ("[M]any provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts – indeed, that can fairly be said to be the theme of the legislation.") (emphasis omitted).

Cir. 2001) (holding that "a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking [a claim] in constitutional garb" or "through the facile device of re-characterizing" claims to avoid a clear jurisdictional bar).

In sum, regardless of how Plaintiff seeks to frame the issue, 8 U.S.C. § 1252(g) precludes judicial review of the Government's exercise of its prosecutorial discretion. Accordingly, the decisions of DHS to issue an NTA and place Plaintiff in removal proceedings, and thereby terminate DACA, are not subject to judicial review, and the Court should reject Plaintiff's motion for preliminary relief.

### ii. Any viable claims must be channeled through Plaintiff's removal proceedings and not this Court.

To the extent Plaintiff has any viable claims, the REAL ID Act, codified in 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), bars him from raising his claims in district court. Under a statutory scheme designed to "put an end to the scattershot and piecemeal nature of the review process," all claims arising from removal proceedings must be raised in immigration court and channeled through the petition for review process. *Aguilar v. Immigration & Customs Enf't*, 510 F.3d 1, 9-10 (1st Cir. 2007). The Ninth Circuit has affirmed this channeling requirement without exception. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029 (9th Cir. 2016). Section 1252(a)(5), entitled "[e]xclusive means of review," requires that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) provides "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added).

These channeling provisions are not limited to challenges to final orders of removal but preclude review in district court of "any" challenge "arising from any action" taken to

3:17-CV-01840-JM-(NLS)

remove an alien. *See J.E.F.M.*, 837 F.3d at 1031. The second sentence of Section 1252(b)(9) explicitly precludes jurisdiction to review (i) orders, "or [(ii)] such questions of law or fact." *Id*. The questions of law and fact described in the preceding sentence modify those "arising from any action taken or proceeding brought to remove an alien from the United States." *Id*. Thus, claims arising from "any action taken" to remove an alien from the United States – including the decision to issue an NTA, a necessary action towards commencing removal proceedings, and one that terminates DACA – are channeled through the petition for review process and cannot be brought in federal district court. To hold otherwise would effectively excise the words "any action taken" from the statute. *See Aguilar*, 510 F.3d at 10; *cf. Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (in the context of an APA claim, ignoring how claim "is framed" for purposes of determining whether claim must be channeled through the petition for review process). Congress' intent was simple: if the issue is one that can be raised in removal proceedings, and ultimately in a petition for review, then the statute precludes district court review). *See J.E.F.M.*, 837 F.3d at 1034 (citing H.R. Rep. No. 109-72, at 173 (statute was "intended to preclude all district court review of any issue raised in a removal proceeding)); *cf. Aguilar*, 510 F.3d at 9-10 ("Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process. . . .").

This approach effectuates the general rule precluding simultaneous review of a question by both an administrative body and a federal court. *See Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408-9 (9th Cir. 1996). Moreover, there is no "general constitutional right" for an alien to review prosecutorial deliberations in order to avert or prevent removal proceedings. *See Carranza,* 277 F.3d at 72, citing *AADC*, 525 U.S. at 487-92.

Here, Plaintiff challenges the Secretary's discretionary decision to issue an NTA and thereby terminate his DACA. *See* Dkt. No. 2-1 at 12 ("USCIS's decision to terminate his DACA status *automatically—i.e.*, without considering the basis for the NTA or offering Mr. Gonzalez an opportunity to respond—was both in blatant disregard of

established procedures for DACA termination and an arbitrary action that flew in the face of the basic purpose of the DACA program."). Specifically, Plaintiff argues he has a constitutional interests in deferred action and in employment authorization that are protected by due process. *Id*. at 21-22. But where Plaintiff challenges Defendants' exercise of prosecutorial discretion to issue an NTA – a predicate step in commencing removal proceedings – which has the effect of terminating deferred action and employment authorization, his challenge necessarily arises from "action taken or proceedings brought to remove an alien." *See* 8 U.S.C. §§ 1252(a)(5); 1252(b)(9). In fact, he is challenging the very validity of the "proceedings." *See AADC*, 525 U.S. at 484-85 (explaining what deferred action is).

The Ninth Circuit has made clear that, in the context of a petition for review ("PFR"), it may review alleged constitutional violations – which here are insubstantial – including claims that were not raised in removal proceedings. *See, e.g., J.E.F.M*., 837 F.3d at 1038 (explaining that, even if never raised in removal proceedings, a court of appeals has the authority to resolve questions of constitutional rights); *see generally Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030 (9th Cir. 2008) (asserting jurisdiction over "Questions of law, and in particular due process challenges to removal orders"). The Ninth Circuit held that taken together, 8 U.S.C. §§ 1252(a)(5) and (b)(9) "mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through the PFR process." *See id*. at 1031 (emphases in original). Plaintiff may prefer that his constitutional claims be resolved now rather than at a later date, but his preference provides no basis for this Court to exercise jurisdiction over claims that are subject to a statutory channeling provision. *See J.E.F.M.*, 837 F.3d at 1035-36, 1038.

The termination of deferred action due to issuance of an NTA and the commencement of removal proceedings upon filing of the NTA with the immigration court are two ways of saying the same thing – DHS has decided to take action to remove the alien. By arguing that Plaintiff is constitutionally entitled to deferred action (*i.e.*, that DHS

must defer acting to remove him) he is, by definition, arguing that DHS is barred from acting to remove him. Those claims, at least in these circumstances, must be channeled through petitions for review because Congress imposed significant limitations on aliens' ability to challenge decisions and actions related to removal proceedings. *See AADC*, 525 U.S. at 485 n.9.

### b.   Nothing in the Constitution or APA Establishes a Right that Constrains DHS's Exercise of Discretion.

Even if this Court finds that the INA's jurisdiction-stripping and channeling provisions might not preclude review of Plaintiff's claims, the Court should still deny Plaintiff's motion for emergency relief because Plaintiff's merits claims fail as a matter of law. Here, Plaintiff can establish neither a constitutional nor an administrative right to receive any process regarding the termination or denial of DACA because deferred action is necessarily an exercise of the Executive's prosecutorial discretion. Indeed, Plaintiff argues that Defendants' determinations would be proper if subject to "a process in which USCIS actually exercises its discretion and provides a reasoned explanation that is based on consideration of relevant factors." Dkt. No. 2-1 at 18. In fact, DHS acted based on that discretion by issuing an NTA based on factors involving Plaintiff's criminality for harboring, which put Plaintiff into removal proceedings and had the effect of terminating his DACA. *See* Dkt. Nos. 2-16 and 2-17, Pl.'s Exs. M & N.

### i.   Plaintiff has no Constitutional Interest in Continued DACA or Employment Authorization.

Here, Plaintiff asserts both liberty and property interests in the continued receipt of his DACA and seeks procedural due process protections with regard to its termination. *See* Dkt. No. 2-1 at 21 (asserting a liberty interest in DACA based on "the assurance not to be apprehended or seek removal of DACA recipients based solely on the basis of their deferred action); *id.* (citing *Morrisey v. Brewer*, 408 U.S. 471 (1972) (also alleging that a liberty interest "encompasses the ability to work, raise a family, and 'form the other enduring attachments of life.'")).

3:17-CV-01840-JM-(NLS)

1
2
3
4

      To establish a procedural due process interest, a Plaintiff "clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

5
6

### 1. Termination of DACA does not Infringe upon an Established Constitutional Interest.

7
8
9
11
12

      First, the mere fact that an individual alleges an injury does not result in a loss of liberty. *Paul v. Davis*, 424 U.S. 693, 712 (1976). The cases on which Plaintiff relies to support an infringement on his liberty interest are inapposite. In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court considered the right of parolees to remain at liberty as long as the conditions of parole were not violated. However, Plaintiff cannot allege that his actual liberty is presently at issue. Similarly, while Plaintiff cites *Morrisey* to discuss "other enduring attachments of life," Plaintiff purports that such attachments extend to the ability to work and raise a family. *See* Dkt. No. 2-1 at 21, citing *Morrisey*, 408 U.S. at 471. Such extension of constitutional interest would directly conflict with related rulings.

13
14
15
16
17

      Plaintiff's claims regarding the right to raise a family conflict with the Ninth Circuit's determination that there is no "right to family unity" to reside in the United States "simply because other members of their family are citizens or lawful permanent residents." *De Mercado v. Mukasey*, 566 F.3d 810, 816 (9th Cir. 2009). The same goes for the right of aliens to work in the United States without authorization. *See Pilapil v. INS*, 424 F.2d 6, 11 (10th Cir. 1970), *cert denied*, 400 U.S. 908 (1970); *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268, 1273 (S.D. Fla. 1989) (holding that noncitizens do not have a constitutional right to work without authorization). Thus, there is no judicial review of the decision to terminate work authorization. *See Perales v. Casillas*, 903 F.2d 1043, 1047-48 (5th Cir. 1990) ("[T]here is nothing in the [INA] expressly providing for the grant of employment authorization . . . . to aliens who are the

18
19
20
21
22
23
24
25
26
27
28

beneficiaries of approved petitions") (vacating the challenged portion of the injunction); *see, e.g., Kaddoura v. Gonzales*, No. C06-1402 RSL, 2007 WL 1521218, at *4-5 (W.D. Wash. May 21, 2007) (finding a lack of judicial review). As a matter of law, a plaintiff cannot assert an established constitutional right to DACA or work authorization.

### 2. Termination of DACA does not Infringe upon a Constitutional Interest based on Entitlement.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of *entitlement* to it." *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013) (citing *Roth*, 408 U.S. at 577); *see also Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) (underscoring that aliens cannot claim a cognizable due process interest in discretionary immigration relief or benefits); *Tefel v. Reno*, 180 F.3d 1286, 1301 (11th Cir. 1999) ("awarding and then revoking discretionary relief does not offend due process"). A property interest subject to procedural due process protection may arise where such interest is secured by "existing rules or understandings that stem from an independent source . . . ." *Roth*, 408 U.S. at 577. The independent source can be a statute, *see Goss v. Lopez*, 419 U.S. 565, 572-73 (1975); a regulation, *see Glenn v. Newman*, 614 F.2d 467, 471-72 (5th Cir. 1980), *overruled on other grounds by Shearer v. Bowen*, 216 F.3d 1080 (5th Cir. 2000); an express or implied contract, *see Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972); or a mutually explicit understanding. *Id*. at 602-03. In a pair of companion cases handed down the same day, the Supreme Court explained that "government employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." *Blantz*, 727 F.3d at 922-23 (comparing *Roth*, 408 U.S. 576-78, with *Perry,* 408 U.S. at 599-603).

For example, when a professor sued for deprivation of property without due process after his employment contract was not renewed, the Court found that the professor lacked a protected property interest in his continued employment because his employment contract was for a fixed one-year term. *Blantz*, 727 F.3d at 922-23 (citing *Roth*, 408 U.S. at 566). Similarly, when a nurse sued over her termination, relying on orientation documents that stated "termination *can* occur as a result of the performance review procedures" detailed in the document, the Ninth Circuit concluded she lacked a property interest in her continued employment because the documents "do not guarantee that every termination *must* be preceded by a peer review process or any other specified departmental procedures." *Id.* at 924.

Similarly, nothing in the DACA memoranda, public Q&A, or the DACA SOP indicate any promise of benefits or entitlement to initial or continuing deferred action or DACA-based employment authorization. *See, e.g.,* Dkt. 2-11, Pl.'s Ex. H (USCIS FAQ) ("DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion."). Here, the DACA guidance and policies made clear that a recipient of DACA has no constitutionally protected interest in the continuation of DACA or a constitutionally protected interest in notice prior to termination. Specifically, the 2012 Memorandum states, "[t]his memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." Dkt. No. 2-5, Pl.'s Ex. B at 3. In addition, the USCIS FAQs specifically state that deferred action can be terminated before it expires, explaining, "DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." Dkt. No. 2-11, Pl.'s Ex. H at Q27. The USCIS FAQs further explain that the phrase "national security or public safety threat" includes but is not limited to "gang membership, participation in criminal activities, or participation in activities that

3:17-CV-01840-JM-(NLS)

threaten the United States." *See id.* at Q:65.[6] Reading these documents in context, a DACA recipient does not have a protected property interest in the continuation of his or her DACA or DACA-based employment authorization. *See, e.g.*, *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1020-21 (9th Cir. 2011) ("A person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government. The Supreme Court has explained, '[a] constitutional entitlement cannot be created—as if by estoppel— merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past.' We have similarly held that a government body's past practice of granting a government benefit is insufficient to establish a legal entitlement to the benefit." (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)) (citations omitted); *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 581 (2d Cir. 1989) (observing that, for due process purposes, "the existence of provisions that retain for the [government] significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them"). These policies and guidance are consistent with longstanding authority regarding the exercise of prosecutorial discretion in the context of immigration law. *See AADC*, 525 U.S. at 484 (recognizing that deferred action is a "commendable exercise in administrative discretion, developed without express statutory authorization"). Accordingly, the Court should deny Plaintiff's motion for emergency relief because his claims fail as a matter of law.

//

//

---

[6] Although criminal activity "*can*" result in termination, it is not the case that "every termination *must* be preceded" by criminal activity. *See Blantz*, 727 F.3d at 924. The Government retains the discretion to terminate DACA for other reasons.

3:17-CV-01840-JM-(NLS)

### ii. The APA Affords Plaintiff no Actionable Interest Regarding the Termination of DACA or Employment Authorization.

Assuming jurisdiction *arguendo*, there is no basis to conclude that Defendants are required to provide notice to a DACA recipient before issuing an NTA that terminates DACA, or to issue a notice of the termination of that DACA. The USCIS FAQ specifically states that DACA "may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." Dkt. No. 2-11, Pl.'s Ex. H at Q:27. Contrary to Plaintiff's assertions, DHS procedural guidance provides for termination of deferred action without issuing a Notice of Intent to Terminate or providing a chance to respond. *See* Dkt. No. 2-9, Pl.'s Ex. F and Exhibit B.

For example, where CBP or ICE issues a Notice to Appear, the DACA guidance provides that DACA terminates automatically. Per Appendix I, the related Employment Authorization Document terminates when removal proceedings are initiated, which were triggered here by the notice. Def.'s Ex. B; 8 C.F.R. § 274a.14(a)(1)(ii), (2). CBP or ICE may decide to issue an NTA, among other reasons, where there is a disqualifying criminal offense or public safety concern, and USCIS will generally issue a Notice of Action informing the individual that his DACA and Employment Authorization Document terminated automatically due to the NTA. Def.'s Ex. B at 2 ("On [Date NTA served on alien], [ICE] issued you a Notice to Appear (NTA). . . . USCIS is notifying you that your deferred action as a childhood arrival and your employment authorization terminated automatically as of the date your NTA was issued."). The determination to issue the NTA remains within the discretion of the agency. 8 C.F.R. § 239.1(a) ("Any immigration officer, or supervisor thereof, performing an inspection of an arriving alien at a port-of-entry may issue a notice to appear to such alien."); *see*, *e.g.*, *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013) (discussing historic roots of this discretion).

Plaintiff's argument that Defendant's internal procedures require notice and an opportunity to respond in every DACA termination is incorrect, and it is based on a

selective reading of those procedures. Dkt. No. 2-1 at 5-6, 12-14 (alleging Defendants acted in violation of the *Accardi* doctrine because they failed to adhere to their own internal operating procedures.) Here, Defendants obtained information through Plaintiff's arrest and detention process, including interviews with other unlawfully present aliens hiding in the attic of the house where Plaintiff was arrested, which suggested to Defendants that Plaintiff was involved in a human smuggling operation. Exs. D and E. That information led to the discretionary determination to issue an NTA, which simultaneously terminated Plaintiff's DACA and EAD. *See* Dkt. No. 2-16, Pl.'s Ex. M; Dkt. No. 2-17, Pl.'s Ex. N. The Notice of Action that Plaintiff received following the NTA was drawn directly from Appendix I of the DACA SOP. *See* Def.'s Ex. B at 2. Criminal activity that is considered a national security or public safety concern, even without a conviction, is a basis for NTA issuance and resultant DACA termination. *See*, *e.g.*, Dkt. No. 2-10, Pl.'s Ex.G (investigation and/or arrest for human smuggling makes an unlawful immigrant "a top immigration enforcement priority."). Defendants, therefore, exercised their discretion to initiate removal proceedings against Plaintiff by issuing an NTA. As prescribed in Chapter 14 and Appendix I of the DACA SOP, the issuance of the NTA immediately terminated Plaintiff's DACA, with no additional notice or opportunity to respond required. Per Appendix I, the NTA also terminated Plaintiff's employment authorization. Thus, Plaintiff has no basis to rely on the *Accardi* doctrine, which requires an agency to comply with its own regulations, to allege a violation of internal operating procedures.

Additionally, courts have declined to apply the *Accardi* doctrine in matters of prosecutorial discretion. *See Carranza*, 277 F.3d at 72-73 (declining to apply *Accardi* doctrine in habeas challenge to alleged "failure of the INS to exercise individualized discretion in its decision to initiate deportation proceedings," observing that "[w]hether or not the INS exercised its discretion is therefore beside any relevant point" as "petitioner did not have a right to demand the exercise of this discretion in the first place"); *United*

*States v. Lee*, 274 F.3d 485, 492-93 (8th Cir. 2001) ("Courts have agreed that individuals have no enforceable rights under another internal DOJ policy known as the *Petite* policy, which restricts federal prosecution of individuals already prosecuted under state law for the same act or acts. Prosecutorial discretion has been treated differently than other types of agency discretion, and the special nature of prosecution is the reason that the *Accardi* doctrine has not been applied to criminal law enforcement policies and procedures."). The *Accardi* doctrine is also inapplicable in the context of internal operating guidelines that preserve the exercise of agency discretion. *See Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1009 (9th Cir. 1987) (finding amended Operating Instructions were "general statements of policy" because the instructions preserved the agency's flexibility and opportunity to make discretionary determinations); *id.* ("a directive must not establish a binding norm and must leave agency officials free to consider the individual facts in the various cases that arise and to exercise discretion") (internal citations and quotations omitted). Thus, the Court should deny Plaintiff's requested relief because there is no basis to conclude that Defendants are required to provide notice to a DACA recipient before issuing an NTA or to issue a notice of the termination of that DACA.

## C. The Remaining Preliminary Injunction Factors Favor Defendants.

Where the Government is the opposing party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants have strong interests in enforcing U.S. immigration laws effectively and consistent with the statutory removal scheme. *See AADC*, 525 U.S. at 490 ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and "permit[s] and prolong[s] a continuing violation of United States law."). These interests outweigh the harms alleged by Plaintiff, especially considering the amount of time that has passed since Defendants first terminated Plaintiff's DACA and began removal proceedings. For these additional reasons, Plaintiff's motion should be denied.

3:17-CV-01840-JM-(NLS)

Dated: September 21, 2017                    Respectfully submitted,

                                             CHAD A. READLER
                                             Acting Assistant Attorney General

                                             WILLIAM C. PEACHEY
                                             Director
                                             District Court Section
                                             Office of Immigration Litigation

                                             /s/ Jeffrey S. Robins
                                             JEFFREY S. ROBINS
                                             Assistant Director
                                             U.S. Department of Justice
                                             P.O. Box 868, Ben Franklin Station
                                             Washington, D.C. 20044
                                             (202) 616-1246
                                             jeffrey.robins@usdoj.gov

                                             *Attorneys for Defendants*

3:17-CV-01840-JM-(NLS)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served electronically through the CM/ECF to the registered participants on the date of its electronic filing, September 21, 2017.

/s/ Jeffrey S. Robins
JEFFREY S. ROBINS
Assistant Director
