# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO LUCIANO GONZALEZ TORRES,<br><br>                                Plaintiff,<br><br>   v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. CUSTOMS AND BORDER PROTECTION,<br><br>                           Defendants. | CASE NO. 17cv1840 JM(NLS)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |

Plaintiff Alberto Luciano Gonzalez Torres moves to enjoin the revocation of the legal status he obtained through the Deferred Action for Childhood Arrivals ("DACA") program in order to permit him to apply for an extension of his DACA status. Defendants U.S. Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Customs and Border Protection ("USCBP") oppose the motion. Having carefully considered the matter presented, the court record, the arguments of counsel and, for the reasons set forth below, the court grants the motion for preliminary injunction.

/ / /

## BACKGROUND

On September 11, 2017, Plaintiff commenced this declaratory and injunctive relief action seeking a declaration that the automatic termination of his DACA status, without notice or an opportunity to contest the termination, (1) failed to comply with the DACA Standard Operating Procedures ("DACA SOP"); (2) violated the arbitrary, capricious, and abuse of discretion standard of the Administrative Procedure Act ("APA"); and (3) violated Plaintiff's Procedural Due Process rights under the Fifth Amendment.

<u>Plaintiff Obtains DACA Status</u>

Plaintiff is a 24-year-old citizen of Mexico who was brought to the United States by his family when he was eight years old. Plaintiff and his family entered the United States without authorization from the Attorney General. Since his entry into the United States, Plaintiff has lived in San Diego, California where he graduated from Altus Charter High School in 2011. From 2011 to 2013 Plaintiff was unable to obtain lawful employment due to his immigration status. Plaintiff has no criminal convictions and had never been arrested until the 2016 detention in this case.

In June 2012, the Obama Administration created a program which allowed certain immigrants to avoid deportation and obtain work permits for a period of two years, renewable upon good behavior. The contours of the DACA program were set out in a June 15, 2012 Memorandum from former Secretary of the DHS, Janet Napolitano, and which became known as the "Napolitano Memo." The Napolitano Memo provided the criteria to be satisfied before an individual could be considered for an exercise of prosecutorial discretion. In broad brush, one qualified for DACA status upon showing that the individual:

- entered the United States before their 16th birthday and prior to June 2007;
- lived continuously in the United States during the previous five years;
- was currently in school, a high school graduate or was honorably discharged

1      from the military;

2   •   was under the age of 31 as of June 15, 2012; and

3   •   not have been convicted of a felony, significant misdemeanor, three other
4      misdemeanors, nor posed a threat to national or public safety.

5      The program did not, and still does not, provide lawful status or a path to
6   citizenship, nor, among other things, does it provide eligibility for federal welfare or
7   student aid.  (Pls. Exh. B).

8      In early 2013, satisfying all prerequisites for DACA status, Plaintiff applied for,
9   and was granted, DACA status.   Having obtained DACA status, Plaintiff was
10  considered "lawfully present" in the country and granted an Employment Authorization
11  Document ("EAD") and Social Security Number, so that Plaintiff could be lawfully
12  employed.  The approval letter issued by USCIS informed Plaintiff that "in the exercise
13  of its prosecutorial discretion, [USCIS] has decided to defer action on" his case for a
14  period of two years.  "Deferred action does not confer or alter any immigration status."
15  (Pl. Exh. I).  In 2014, DHS renewed Plaintiff's DACA status.

16     Upon receipt of DACA status, Plaintiff obtained full-time employment in the
17  airline food packaging industry and worked in that industry from 2013 until May 2016,
18  working the 7:00 p.m. to 4:00 a.m. shift.  The hiring process involved interviews, drug
19  tests, background checks, and verification of employment authorization.  Plaintiff used
20  a portion of his income to financially support his family.   In May 2016, Plaintiff's
21  DACA status was purportedly revoked by the USCIS in a Notice of Action.  Plaintiff
22  informed his employer of the loss of DACA status and was terminated.  The employer
23  informed Plaintiff that he could re-apply for employment once he obtains work
24  authorization.

25     Revocation of DACA Status

26     On May 6, 2016, Plaintiff declares that an acquaintance named Adolfo asked
27  him, as he had in the past, to look after his dogs while he was out of town.  Plaintiff
28  went to Adolfo's home, took care of the dogs, and encountered two other individuals

17CV1840

at the home. Plaintiff planned to have his sister pick him up from Adolfo's house and drive him to work by 7:00 p.m., the shift start time. At 4:00 p.m., a few hours after arriving at Adolfo's house, USCBP officers knocked on the door and asked Plaintiff if they could search the premises. He informed the USCBP officers that they needed a search warrant to enter the home as he did not believe he "had permission to let them in because it was not my house." (Gonzalez Decl. ¶11). The Officers did not enter the home, but remained outside.

Around 5:00 p.m. a man not known to Plaintiff arrived, represented that he was the owner of the house, and asked Plaintiff to exit his home. Outside the home, Plaintiff was interviewed by USCBP officers and informed them that he possessed DACA status and a valid EAD. According to Plaintiff, he was then arrested, handcuffed, and spent the next two days being "aggressively" interrogated by two officers. The officers asked him about "wrongdoing at the house that I did not understand. I kept asking them for details and telling them, 'I don't understand why I'm being detained.'" (Id. ¶18). "No one interrogated [Plaintiff] after those first two or three days," or after his release from custody.

After two or three days, Plaintiff was transferred to another facility. On June 1, 2016, Plaintiff was provided with a bond hearing before Immigration Judge McSeveney, and released two days later on a $5,000 bond. In the sixteen months since his release, Plaintiff has not had any law enforcement contacts. At oral argument, the court was advised the matter of Plaintiff's removal is still pending.

To provide additional context to Plaintiff's declaration, Defendants represent that Plaintiff (and another individual arrested at the searched house) was arrested on May 6, 2016, for harboring illegal aliens in violation of 8 U.S.C. §1324(a)(1)(A)(iii) and §1182(a)(6)(E)(i). Once the owner of the home arrived at Adolfo's residence, the owner consented to permit USCBP agents to search the residence (the renters were not at home). Inside, USCBP discovered 12 illegal aliens (five from China and seven from Mexico) hiding in the attic. The record of Deportable/Inadmissible Alien documents

indicate that three material witnesses identified Plaintiff as the individual who told them to hide in the attic.

On May 7, 2016, USCIS issued Plaintiff a Notice to Appear ("NTA") charging him as "inadmissible" to the United States (i.e. Plaintiff was deemed unlawfully present in the country) pursuant to 8 U.S.C. §1182(a)(6)(A)(i). On May 23, 2016, USCIS provided Plaintiff with a Notice of Action informing him that his DACA status and employment authorization had been automatically terminated as of the date of the NTA (May 7, 2016). The Notice of Action also informed Plaintiff that an appeal or motion to reopen/reconsider "may not be filed." (Pls. Exh. N).

The DACA SOP

The DACA SOP issued by DHS sets forth the procedures for adjudicating DACA applications, renewals, and the termination of participation in DACA. In pertinent part, the DACA SOP outlines four procedures to be followed upon termination or revocation of DACA status. First, in the event an immigration officer learns that DACA status was either erroneously or fraudulently issued to a DACA recipient, the agency issues a Notice of Intent to Terminate ("NOIT") to the recipient. The NOIT provides notice that, upon termination of DACA status, the recipient will lose employment authorization. The DACA SOP provides that the NOIT must inform the recipient that he or she has "33 days to file a brief or statement contesting the grounds cited in the" NOIT. (Pls. Exh.F at 136).

Second, the DACA SOP also provides that criminal offenses or public safety concerns deemed to be Egregious Public Safety ("EPS") cases, as defined in the November 7, 2011 Memorandum for EPS cases ("2011 Memorandum"), may serve as a basis to terminate DACA status. Once the underlying conduct is found to be an EPS case, the officer then forwards the case to the Background Check Unit DACA Team ("BCU") who, in turn, forwards the case to ICE for application of the 2011 Memorandum. In the event ICE accepts the case and issues an NTA, the recipient will automatically lose DACA status. Additionally, upon filing the NTA with EOIR

(Executive Office for Immigration Review), the recipient's employment authorization terminates automatically.  (Id. at 137).

Third, in the event ICE does not accept the EPS case, or the underlying offense is non-EPS conduct, BCU DACA Team is instructed to reopen the case and issue a NOIT.  The individual then has 33 days to submit a brief contesting the grounds for removal identified in the NOIT.

Fourth, in the event USCIS determines, after consulting with ICE, that exercising prosecutorial discretion is not consistent with DHS's enforcement policies, and ICE does not plan to issue an NTA, the officer refers the matter through the normal chain of command to Headquarters Service Center Operations ("HSCO").  In the event HSCO determines that the case warrants final termination, the DACA recipient must be provided with DACA Form 603, and an opportunity to respond.

In short, except in EPS cases, the DACA SOP requires notice and an ability to contest the NOIT before DACA status may be terminated.  In EPS cases, DACA status is automatically revoked once ICE accepts the case and issues a NTA.  However, as set forth in the November 7, 2011 Policy Memorandum, an NTA can only by issued by USCIS under limited circumstances not applicable here (in cases involving modifying conditions of residency, denial of Form I-829, termination of refugee status, adjustment of status denials, and asylum).  (Pls. Exh. G). It is undisputed that Defendants did not comply with any of the specified DACA termination provisions, including the referral of the case to ICE for a decision on the issuance of an NTA.

Recent DACA Related Events

On September 5, 2017, Defendant DHS announced a plan to eliminate DACA, beginning in March 2018.  Current DACA recipients whose status expires on or before March 5, 2018, may apply for a two-year renewal, but renewal applications are due on or before October 5, 2017.

In light of the numerous recent government issued memoranda concerning modifications to immigration policies, laws, regulations and procedures, the court notes

17CV1840

that these memoranda preserve the DACA program. For example, on February 20, 2017, the Secretary of Homeland Security John F. Kelly issued an implementing Memorandum stating that DHS "will no longer exempt classes or categories of removable aliens from potential enforcement." However, the memorandum specifically left intact the DACA program. On June 15, 2017, Secretary Kelly issued a memorandum rescinding the Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA"), but temporarily leaving the DACA program in place. (Pls. Exh. A).

In light of the announced elimination of DACA, and the October 5, 2017 deadline for renewals under DACA, Plaintiff seeks expedited relief to enjoin Defendants from enforcing the termination of his DACA status in order to permit him to file a DACA renewal application. On September 21, 2017, the court entered an Amended Scheduling Order setting the matter for oral argument on September 28, 2017.

## DISCUSSION

**Legal Standards**

To obtain preliminary or temporary injunctive relief, the party must satisfy one of two tests: (1) a combination of probable success and the possibility of irreparable harm, or (2) the party raises serious questions and the balance of hardship tips in its favor. Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." Id; Miller v. California Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994 (en banc). The court also considers the public interest in the issues raised by the parties. Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008).[1]

---

[1] Pursuant to Fed.R.Civ.P. 65(a), the court treats Plaintiff's motion as one for preliminary injunctive relief.

**Subject Matter Jurisdiction**

Defendants contend that the jurisdictional stripping provision of the Immigration and Naturalization Act prevents this court from reviewing Plaintiff's claim. The statute provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. §1252(g). The parties do not dispute that, as stated in the statute, this court does not have jurisdiction to entertain claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." Id. Under this provision, the court is stripped of jurisdiction to entertain Defendants' ultimate discretionary determination as to Plaintiff's DACA status. However, Defendants misconstrue §1252(g).

Section 1252(g) must be construed narrowly and "applies only to three discrete actions. . . 'to commence proceedings, adjudicate cases, or execute removal orders.'" Wong v. United States, 373 F.3d 952, 963-64 (9th Cir. 2004); Coyotl v. Kelly, 2017 WL 2889681 (N.D. GA. June 12, 2017) (jurisdictional stripping provision does not bar the exercise of jurisdiction over claim that termination of DACA status occurred without following the non-discretionary termination provisions of the DACA SOP); (United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004) (district court may consider "a purely legal conclusion that does not challenge the Attorney General's discretionary authority, even if the answer . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"); Ramirez-Perez v. Ashcroft, 336 F.3d 1001, 1004 (9th Cir. 2003) (courts "retain jurisdiction to review constitutional claims, even when those claim address [agency] discretion"). Accordingly, this provision does not deprive the court of jurisdiction to entertain Plaintiff's claim that the termination of his DACA status did not comply with the non-discretionary DACA SOP.

Similarly, the provision related to the review of orders of removal, 8 U.S.C. §1252(b)(9), does not prevent the court from entertaining Plaintiff's claims. Here, there is no final order of removal entered against Plaintiff and no proceedings have been commenced against Plaintiff. As noted in Sing v. Gonzales, 499 F.3d 969, 978 (9th Cir. 2007), §1252(b)(9) "appl[ies] only to those claims seeking judicial review of orders of removal." Here, Plaintiff brings a procedural challenge to termination of his DACA status, an issue independent from any removal proceedings. Accordingly, this provision does not deprive the court of jurisdiction to entertain Plaintiff's claim.

In sum, the court concludes that it possesses jurisdiction to entertain Plaintiff's claims.

**Likelihood of Success on the Merits**

Both Counts One and Two in the complaint seek relief pursuant to the APA, 5 U.S.C. §702, based upon Defendants failure to comply with the DACA SOP when terminating Plaintiff's DACA status. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review." 5 U.S.C. §702. The APA further states "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Id. § 704. Section 706 instructs the court reviewing agency action to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." Not only shall the reviewing court compel agency action unlawfully withheld but shall also "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. §§706(1) and (2)(A).

The court concludes that Defendants' failure to follow the termination procedures set forth in the DACA SOP is arbitrary, capricious, and an abuse of discretion. See U.S. ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) Alcaraz v. INS, 384 F.3d

1150, 1162 (9th Cir. 2004) (an agency's failure to follow its own procedures is a sufficient ground to set aside agency action). Two of the four DACA SOP termination procedures require the appropriate agency to provide the DACA recipient with a NOIT identifying the grounds for termination and providing 33 days to file a brief or statement contesting the grounds. (Pls. Exh. F at 136-37). Defendants did not comply with this procedure in the DACA SOP. One other means of terminating DACA status is to refer the matter to HSCO which then determines whether the case warrants final termination. If so, the DACA recipient must be provided with DACA Form 603, and an opportunity to respond. Defendants did not comply with this procedure in the DACA SOP. Lastly, while DACA status may be terminated by ICE in an EPS case, the Notice received by Plaintiff identified his presence in the United States without being admitted or paroled in violation of 8 U.S.C. §1182(a)(6)(A)(i) as the grounds for removal. A violation of that provision does not constitute an EPS case because the 2011 Memorandum identifies only certain aggravated felony alien smuggling offenses (8 U.S.C. §1001(a)(43)(N)) as disqualifying criminal conduct. Unlawful presence in violation of §1182(a)(6)(A)(i) is not an aggravated felony. Accordingly, the court concludes that Defendants have failed to follow their own procedures in terminating Plaintiff's DACA status.

Defendants broadly argue that the DHS possesses such broad prosecutorial discretion that they need not follow the DACA SOP in terminating the status of DACA recipients. The court categorically rejects this proposition. While Defendants are granted broad discretion to commence, adjudicate, and execute removal orders, a fundamental principle of federal law is that a federal agency must follow its own procedures. Morton v. Ruiz, 415 U.S. 199, 233-35 (1974) ("[W]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); Nicholas v. INS, 590 F.2d 802, 809 (9th Cir.1979) (holding that INS violated its own regulation in processing a non-citizen's request for immigration records); United States v. Heffner, 420 F.2d 809 (4th Cir. 1969) (courts must overturn

17CV1840

agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself).  In <u>Accardi</u>, 347 U.S. 260, the petitioner alleged that the Board of Immigration Appeals ("BIA") failed to exercise its discretion in determining his application for suspension of deportation.  <u>Id.</u> at 261.  Petitioner alleged that the BIA deferred to the decision of the Attorney General and, therefore, did not exercise its own regulatory discretion in determining his application.  The BIA denied petitioner's application allegedly because petitioner's name was on a list of immigrants the Attorney General wanted deported.  The regulatory scheme required the BIA to exercise its own judgment when considering immigration appeals, and not to rely upon the Attorney General's determinations.  The Supreme Court reversed the BIA's denial of the application and remanded for further proceedings because the BIA allegedly failed to exercise its own discretion as required by its own relevant regulations.

Defendants further contend, in essence, the NTA issued by USCBP in connection with  removal proceedings for Plaintiff was tantamount to ICE issuing a NTA terminating DACA status pursuant to the DACA SOP.  But this position is indefensible for several reasons.  First, as discussed elsewhere in this order, the NTA for removal proceedings was predicated upon the "ground" of being illegally present, a charge that is not an aggravated felony for purposes of EPS rules.  <u>See</u> 8 U.S.C. §1001(a)(43)(N); Pls. Exh. G at pp. 61-62.  Second, contrary to defendants' position that immigration removal proceedings are the proper forum for Plaintiff to raise his DACA termination status, an immigration judge has no jurisdiction to reinstate DACA status, or to authorize an application for renewal of DACA status, as acknowledged by Defendants at oral argument.  Basically, Defendants' argument that a USCBP issued NTA for removal purposes is the equivalent of an ICE issued NTA for an EPS case under DACA has no basis in law.  The two NTAs are not fungible, or "flip sides of the same coin," as advanced by Defendants at oral argument.

Here, Defendants have failed to present any evidence that they complied with the termination of DACA status provisions set forth in the DACA SOP.  Moreover, Plaintiff

17CV1840

has made a strong showing that he is likely to prevail on his APA claim that Defendants acted arbitrarily, capriciously, and abused their discretion by failing to follow the DACA SOP.

In sum, the court concludes that Plaintiff has made a strong showing that he is likely to prevail on the merits.

**Procedural Due Process**

Because the court resolved Plaintiff's claims based upon a statutory analysis, the court does not reach the claim that Defendants violated his Fifth Amendment procedural due process rights. In any event, the court notes that the remedy for violation of the DACA SOP - - notice and an opportunity to contest administrative action - - is an equivalent remedy available under the due process clause.

**Irreparable Harm**

The court concludes that Plaintiff will suffer significant irreparable harm in the absence of an injunction by losing his DACA status and the ability to apply for renewal of that status. The potential harm caused by Defendants' conduct includes the loss of employment, a core benefit under DACA. The deprivation of employment impacts Plaintiff's ability to financially provide for himself and his family. See Cleveland Bd. Of Ed. v. Laudermill, 470 U.S. 532, 543 (1985) (loss of livelihood is a severe harm). The loss of DACA status also undermines one's sense of well-being and subjects Plaintiff to a constant threat of apprehension and possible removal from the only country he has called home. This threatened harm far exceeds any harm suffered by the government. This court is simply requiring Defendants to follow their own procedural dictates for termination of DACA status by essentially giving Plaintiff a meaningful opportunity to be heard before any determination to terminate his DACA status is made.

Defendants argue that Plaintiff's pursuit of a legal remedy 16 months after his DACA status was terminated undermines his claim of irreparable harm. This argument is not persuasive. The precipitating event giving rise to the present action is the September 5, 2017 announcement by DHS that the DACA program is being phased out

17CV1840

and any DACA renewals had to be filed on October 5, 2017. Under these circumstances, Plaintiff's pursuit of this action is timely.

In sum, Plaintiff has demonstrated a significant threat of irreparable harm.

**The Public Interest**

The court concludes that the public interest consideration is multi-faceted and difficult to assess in light of the current political situation. There is no doubt that there is strong interest in enforcing U.S. immigration laws effectively and consistently. On the other hand, the public has a strong interest in the fair and even-handed treatment of immigrants. The court also notes that (1) DACA and DACA recipients have strong national support as reflected in numerous public opinion polls, as well as broad political support, and (2) the political process may comprehensively address the DACA program in the foreseeable future.

In sum, at the present time, this factor neither strongly favors one side nor the other.

**The Balance of Equities**

Applying the Arcamuzi balancing test, Plaintiff has made a strong showing of the likelihood of success on the merits and irreparable harm such that entry of a preliminary injunction is warranted under the circumstances.

## CONCLUSION

For the reasons set forth herein, the court **Grants** Plaintiff's Motion for Preliminary Injunction and

(1) **Orders** that Defendants' May 7, 2016 revocation of Plaintiff's DACA status is vacated and Defendants are preliminary enjoined from enforcing the said revocation;

(2) **Orders** that Defendants' termination of Plaintiff's EAD is vacated and Defendants are preliminarily enjoined from terminating Plaintiff's employment authorization;

(3) **Orders** that Defendants shall fully comply with the DACA SOP should Defendants elect to reconsider Plaintiff's DACA status; and

17CV1840

1        (4) **Orders** that Defendants accept Plaintiff's DACA renewal application.

2    Finally, this order is to remain in effect pending further Order of this court.

3        **IT IS SO ORDERED.**

4    DATED:  September 29, 2017

5                            Hon. Jeffrey T. Miller

6                            United States District Judge

cc:       All parties

17CV1840