CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Assistant Director
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246
Email: jeffrey.robins@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO LUCIANO GONZALEZ TORRES, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Case No. 3:17-CV-01840-JM-(NLS) <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br> DATE:     March 26, 2018 <br> TIME:     10:00 a.m. <br> CTRM:    5D <br> Hon. Jeffrey T. Miller |

1
2
3
4
5
6
7
8
9
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................ 2

ARGUMENT ..................................................................................................... 3

    I.    Standard of Review ................................................................................. 3

        A.    Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) ..................................... 3

        B.    Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) ..................................... 4

    II.    Plaintiff Lacks Standing to Raise Claims Regarding the Enjoined
        May 2016 Termination of his DACA ....................................................... 4

    III.    This Court Lacks Jurisdiction, and any Judicial Challenges to Removal Must
        be Brought in a Petition for Review ........................................................ 5

        A.    The INA Limits Review of Plaintiff's Claims which Arise from
            DHS's Decision to Commence and Adjudicate Plaintiff's
            Removal Proceedings ........................................................................ 6

        B.    Judicial Review of Discretionary DACA Termination after Advance
            Notice and an Opportunity Respond is also Barred under 5 U.S.C.
            § 701(a)(2) ..................................................................................... 13

        C.    Plaintiff Cannot State a Constitutional Claim because the
            Termination of DACA and Employment Authorizations does not
            Implicate a Constitutional Interest ..................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. United States Immigration & Customs Enforcement*,
  510 F.3d 10 (1st Cir. 2007) ............................................................. 13

*Alcaraz v. INS*,
  384 F.3d 1150 (9th Cir. 2004) ........................................................... 6

*Arizona v. California*,
  460 U.S. 605 (1983) ........................................................................... 2

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ................................................*passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 4

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ......................................................................... 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................... 3, 4

*Berrigan v. Sigler*,
  499 F.2d 514 (D.C. Cir. 1974) .......................................................... 2

*Biggs v. Terhune*,
  334 F.3d 910 (9th Cir. 2003) ........................................................... 1

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
  727 F.3d 917 (9th Cir. 2013) ......................................................... 19

*Botezatu v. INS*,
  195 F.3d 311 (7th Cir. 1999) ........................................................... 7

*Carranza, v. I.N.S.*,
   277 F.3d 65 (1st Cir. 2002) ....................................................................... 15

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) ............................................................................... 3

*Clay v. Wells Fargo Home*,
   No. 13-CV-338-KJM(GGHx),
   2013 U.S. Dist. LEXIS 39689 (E.D. Cal. Mar. 21, 2013) ........................... 4

*Colotl v. Kelly*,
   261 F. Supp. 3d 1328 (N.D. Ga. June 12, 2017) ........................................ 7

*De Mercado v. Mukasey*,
   566 F.3d 810 (9th Cir. 2009) .................................................................... 19

*Fabian-Lopez v. Holder*,
   No. 11-71513, 540 F. App'x 760 (9th Cir. Apr. 29, 2013) .......................... 9

*Forziano v. Indep. Grp. Home Living Program, Inc.*,
   613 F. App'x 15 (2d Cir. 2015) .................................................................. 4

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) .................................................................... 13

*Garcia v. Holder*,
   No., 07-60271, 320 F. App'x 288 (9th Cir. April 9, 2009) ......................... 19

*Garcia-Herrera v. Asher*,
   585 F. App'x 439 (9th Cir. 2014) ............................................................... 8

*Gerhart v. Lake Cnty., Mont.*,
   637 F.3d 1013 (9th Cir. 2011) .................................................................. 19

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ........................................................................ *passim*

*ICC v. Bhd. of Locomotive Eng'rs*,
   482 U.S. 270 (1987) ................................................................................. 13

3:17-CV-01840-JM-(NLS)

*Inland Empire—Immigrant Youth Collective v. Duke*,
   No. EDCV 17–2048, 2017 WL 5900061 (C.D. Cal. Nov. 20, 2017) ........................... 17

*J.E.F.M.* v. Lynch,
   837 F.3d 1026 (9th Cir. 2016) ...................................................................... 12

*Ky. Dep't of Corrs. v. Thompson*,
   490 U.S. 454 (1989) ................................................................. 18, 19, 20

*La Jolla Cove Inv'rs, Inc. v. GoConnect Ltd.*,
   No. 11CV1907 JLS JMA, 2012 WL 1580995 (S.D. Cal. May 4, 2012) ....................... 4

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ...................................................................... 13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 3

*Martinez v. Napolitano*,
   704 F.3d 620 (9th Cir. 2012) ....................................................... 13

*McNary v. Haitian Refugee Ctr., Inc.*,
   498 U.S. 479 (1991) ........................................................................ 8

*Mendez-Garcia v. Lynch*,
   840 F.3d 655 (9th Cir. 2016) ....................................................... 19

*Morales de Soto v. Lynch*,
   824 F.3d 822 (9th Cir. 2016) ................................................. 5, 6, 14

*Morrissey v. Brewer*,
   408 U.S. 471 (1972) ...................................................................... 19

*Nicholas v. INS*,
   590 F.2d 802 (9th Cir. 1979) ................................................... 9, 10

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ........................................................................ 3

*Olim v. Wakinekona*,
   461 U.S. 238 (1983) ......................................................................... 19

*Omar v. McHugh*,
   646 F.3d 13 (D.C. Cir. 2011) ........................................................... 20

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
   860 F.3d 1228 (9th Cir. 2017) ............................................................ 3

*Owen Equip. & Erection Co. v. Kroger*,
   437 U.S. 365 (1978) ........................................................................... 3

*Pasquini v. Morris*,
   700 F.2d 658 (11th Cir. 1983) ......................................................... 15

*Perales v. Casillas*,
   903 F.2d 1043 (5th Cir. 1990) ......................................................... 14

*Pilapil v. INS*,
   424 F.2d 6 (10th Cir. 1970)
   *cert denied*, 400 U.S. 908 (1970) .................................................... 19

*PNC Equip. Fin., LLC v. California Fairs Fin. Auth.*,
   No. CV1106248MMMDTBX, 2012 WL 12506870 (C.D. Cal. Feb. 9, 2012) ............... 1

*Ramirez-Perez v. Ashcroft*,
   336 F.3d 1001 (9th Cir. 2003) ........................................................... 8

*Regents of Univ. of Cal. v. United States Dep't of Homeland Sec.*,
   No. C 17-05211 WHA, 2018 WL 339144 (N.D. Cal. Jan. 9, 2018) ............... 19

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ................................................................*passim*

*Report Cactus Corner, LLC v. U.S. Dep't of Agric.*,
   346 F.Supp.2d 1075 (E.D. Cal. 2004)
   *aff'd*, 450 F.3d 428 (9th Cir. 2006) .................................................. 1

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007) ..................................................................................... 4

*Rodriguez v. Sessions*,
  No. 15-72487, 2017 WL 695192 (9th Cir. Feb. 22, 2017).............................. 9

*Romeiro de Silva v. Smith*,
  773 F.2d 1021 (9th Cir. 1985) ................................................................. 9, 10

*Sanchez v. Holder*,
  No. 15CV0089-GPCWVG, 2015 WL 4249446 (S.D. Cal. July 13, 2015) .................... 9

*Silva v. United States*,
  866 F.3d 938 (8th Cir. 2017) ..................................................................... 6, 7

*Singh v. Bardini*,
  No. 09-cv-3382, 2010 WL 308807 (N.D. Cal. Jan. 19, 2010) ...................... 20

*Singh v. Gonzales*,
  499 F.3d 969 (9th Cir. 2007) ........................................................................ 13

*Sissoko v. Rocha*,
  509 F.3d 947 (9th Cir. 2007) .......................................................................... 8

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
  873 F.2d 1221 (9th Cir. 1989) ........................................................................ 3

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) .......................................................................... 3

*Torres-Aguilar v. INS*,
  246 F.3d 1267 (9th Cir. 2001) ........................................................................ 8

*Town of Castle Rock v. Gonzales*,
  545 U.S. 748 (2005) .......................................................................... 6, 18, 20

*Trinidad y Garcia v. Thomas*,
  683 F.3d 952 (9th Cir. 2012) ........................................................................ 20

3:17-CV-01840-JM-(NLS)

*United States v. Alexander,*
    106 F.3d 874 (9th Cir. 1997) ........................................................................ 2

*United States v. Armstrong,*
    517 U.S. 456 (1996) ............................................................................... 14, 15

*United States v. Hovsepian,*
    359 F.3d 1144 (9th Cir. 2004) ..................................................................... 7

*United States v. Lee,*
    274 F.3d 485 (8th Cir. 2001) ...................................................................... 15

*United States v. Raya-Vaca,*
    771 F.3d 1195 (9th Cir. 2014) ................................................................... 20

*Vasquez v. Aviles,*
    639 F. App'x 898 (3d Cir. 2016) ................................................................. 9

*Velasco-Gutierrez v. Crossland,*
    732 F.2d 792 (10th Cir. 1984) .............................................................. 18, 20

*Vilchiz-Soto v. Holder,*
    688 F.3d 642 (9th Cir. 2012) ...................................................................... 9

*Walt Disney Productions v. Filmation,*
    628 F. Supp. 871 (C.D. Cal. 1986) .............................................................. 2

*Walter v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ..................................................................... 8

*Wayte v. United States,*
    470 U.S. 598 (1985) ............................................................................... 14, 15

*Wong v. United States,*
    373 F.3d 952 (9th Cir. 2004) ...................................................................... 8

3:17-CV-01840-JM-(NLS)

# STATUTES

5 U.S.C. § 701(a)(1) ........................................................................................... 5

5 U.S.C. § 701(a)(2) .................................................................................. 5, 13, 14

5 U.S.C. § 702 .................................................................................................... 5

5 U.S.C. § 704 .................................................................................................... 5

5 U.S.C. § 706(2)(A) .......................................................................................... 5

5 U.S.C. § 706(2)(D) .......................................................................................... 5

8 U.S.C. § 1252(a)(B)(i) ..................................................................................... 8

8 U.S.C. § 1252(a)(5) ........................................................................................ 12

8 U.S.C. § 1252(b)(9) ........................................................................................ 12

8 U.S.C. § 1252(g) ..................................................................................... *passim*

# REGULATIONS

8 C.F.R. § 274a.12(c)(14) ................................................................................. 20

# RULES

Fed. R. Civ. P. 12(b)(1) .................................................................................. 1, 3

Fed. R. Civ. P. 12(b)(6) .................................................................................... 3

Fed. R. Evid. 201 .............................................................................................. 1

# INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") challenges both Defendants' automatic termination of his DACA in May 2016 when U.S. Customs and Border Protection issued him a Notice to Appear following his arrest on allegations of alien harboring, and U.S. Citizenship and Immigration Services' ("USCIS") subsequent discretionary termination of his DACA and employment authorization after notice and an opportunity respond. Dkt. No 38. At the heart of Plaintiff's claim is the bald assertion that Plaintiff cannot be an enforcement priority because "DACA recipients are 'low priority cases.'" Dkt. No. 38 at 1.

The Court must dismiss Plaintiff's FAC. First, Plaintiff lacks standing to challenge Defendants' initial termination of his DACA through issuance of an NTA. As a result of the Court's September 29, 2017 Order Granting Motion for Preliminary Injunction ("September 29, 2017 Order"), USCIS reinstated Plaintiff's DACA, accepted his DACA renewal request, issued Plaintiff a Notice of Intent to Terminate ("NOIT") his reinstated DACA, Dkt. Nos. 14-1 & 14-2; Dkt. No. 38 at ¶¶ 132-134; 39-6 at ¶¶ 191-192, and issued a Termination Decision ("Decision") that will terminate Plaintiff's DACA as of December 21, 2017, upon further order of this Court. *See* Dkt. No. 39-6 at 194-197.[1] Thus, the initial termination of Plaintiff's DACA is no longer a final agency action, and amendment of his complaint after Defendants' subsequent termination of his DACA precludes Plaintiff from establishing standing over the initial termination.

---

[1] Although Plaintiff neither cites nor attaches USCIS's NOIT or Termination Decision to his amended complaint, the Court may take judicial notice of those documents and Defendants' policies and guidance under Federal Rule of Evidence 201, as agency materials, *see Report Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F.Supp.2d 1075, 1100 (E.D. Cal. 2004) *aff'd*, 450 F.3d 428 (9th Cir. 2006), and materials from proceedings in other tribunals, *see Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003). For ease of reference, Defendants refer to previously docketed versions of these materials found at Dkt. Nos. 14 and 39. Courts may consider documents subject to judicial notice in deciding a Rule 12(b)(1) facial attack. *See, e.g.*, *PNC Equip. Fin., LLC v. California Fairs Fin. Auth.*, No. CV1106248MMMDTBX, 2012 WL 12506870, at *6 (C.D. Cal. Feb. 9, 2012).

This Court also lacks jurisdiction over Plaintiff's claims because: the Immigration and Nationality Act ("INA") precludes review over Defendants' decision and actions regarding the adjudication of Plaintiff's removal proceedings – including the termination of DACA – and any claims the INA preserves for review must be channeled through Plaintiff's removal proceedings; Defendants' exercise of prosecutorial discretion is not appropriate for judicial review; and the Plaintiff cannot establish a constitutional interest sufficient to proceed on his Due Process claims.[2]

**BACKGROUND**

Here, as a result of the Court's September 29, 2017 Order, USCIS reinstated Plaintiff's DACA, accepted his DACA renewal request, issued Plaintiff a Notice of Intent to Terminate (NOIT) his reinstated DACA, Dkt. Nos. 14-1 & 14-2; Dkt. No. 39-6 at 191-192, and issued a Termination Decision ("Decision") that will terminate Plaintiff's DACA as of December 21, 2017, upon further order of this Court. *See* Dkt. No. 39-6 at 194-197. That Decision specifically referenced the DACA SOP, Dkt. No. 39-6 at 195 ("If after consulting with ICE, USCIS determines that exercising prosecutorial discretion after removal has been deferred under DACA is not consistent with the Department of Homeland Security's enforcement priorities . . . ."), quoting Dkt. No. 2-9 at 15, and goes on to consider Plaintiff's arguments in response to USCIS's NOIT before concluding, the agency's discretion, that termination of DACA is warranted.

---

[2]"The decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute the law of the case for the purposes of further proceedings and does not limit or preclude the parties from litigating the merits. . . ." *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974); *see also Walt Disney Productions v. Filmation*, 628 F. Supp. 871, 879 (C.D. Cal. 1986) (stating that appraisal of the "likelihood of success" standard is not a final decision on the merits). Moreover, the doctrine itself is a guide to the Court's discretion rather than a limit on the Court's jurisdiction. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997), citing *Arizona v. California*, 460 U.S. 605, 618 (1983). Courts may depart from this doctrine in cases, inter alia, of clear error or changed circumstances – both of which Defendants contend are applicable here. *Alexander*, 106 F.3d at 876.

# ARGUMENT

## I.   Standard of Review

### A. Dismissal pursuant to Fed. R. Civ. P. 12(b)(1)

Because federal courts have limited jurisdiction, a court must dismiss any case if it lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). The elements necessary to establish standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, when the issue of jurisdiction is separable from the merits of the case, no presumption of truthfulness attaches to a plaintiff's allegations, and the plaintiff bears the burden of proving that jurisdiction exists. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

The "irreducible constitutional minimum of standing" to assert federal court jurisdiction requires "the plaintiff must have suffered an injury in fact . . . which is . . . concrete and particularized, . . . the injury has to be fairly traceable to the challenged action of the defendant, and . . . it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560 (internal citations and modifications omitted). "Allegations of possible future injury do not satisfy the requirements of Art[icle] III." *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1235 (9th Cir. 2017), citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1141 (2013). Finally, while an imminent future harm may establish standing, the harm alleged cannot be the result of plaintiff's own unlawful conduct. *Id*. at 1042, quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974).

**B. Dismissal pursuant to Fed. R. Civ. P. 12(b)(6)**

To survive dismissal under Rule 12(b)(6), "the complaint must allege sufficient facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Although the Court must accept as true all well-pleaded factual allegations when determining the legal sufficiency of a claim, it need not credit "legal conclusion couched as a factual allegation." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.   Plaintiff Lacks Standing to Raise Claims Regarding the Enjoined May 2016 Termination of his DACA.

When "a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007); *see also Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 17 (2d Cir. 2015) (citations omitted) ("The district court properly assessed the plaintiffs' standing to request an injunction based on the amended complaint, which 'supercede[d] the original, and render[ed] it of no legal effect.'"); *Clay v. Wells Fargo Home, N.A.*, No. 13-CV-338-KJM(GGHx), 2013 U.S. Dist. LEXIS 39689, at *7 (E.D. Cal. Mar. 21, 2013) ("As the amended complaint supersedes the original complaint, and the asserted basis for the preliminary injunction is no longer before the court, the pending motion is moot."); *La Jolla Cove Inv'rs, Inc. v. GoConnect Ltd.*, No. 11CV1907 JLS JMA, 2012 WL 1580995, at *1 (S.D. Cal. May 4, 2012) ("Noting that an amended complaint supersedes any previous complaint, the Court denied the pending motions as moot, but permitted La Jolla Cove to refile its motion for a preliminary injunction, directing it to 'address[ ] how the amendments impact the relief requested.'").

Defendants previously argued that this claim, and the Court's injunction based on this claim, became moot upon the reinstatement of Plaintiff's DACA, Dkt. No. 31 at 2,

3:17-CV-01840-JM-(NLS)

n.2. However, by amending his complaint after the May 2016 termination was no longer in effect the question of mootness turns into one of standing. Now, Plaintiff Gonzalez lacks standing to challenge a procedural and final agency action that he is no longer subject to because Defendants, in compliance with this Court's Order, reinstated Plaintiff's DACA and then terminated it again with advance notice and an opportunity to respond specifically based on procedures identified in U.S. Citizenship and Immigration Service's DACA Standard Operating Procedures. *See*, *e.g.*, *Forziano*, 613 F. App'x at 17.

### III.    This Court Lacks Jurisdiction, and any Judicial Challenges to Removal Must be Brought in a Petition for Review.

The Administrative Procedure Act ("APA") permits persons aggrieved by final agency action to obtain judicial review in federal court where "there is no other adequate remedy in a court." *See* 5 U.S.C. §§ 702, 704. A reviewing court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). However, the APA precludes judicial review of agency decisions when "statutes preclude judicial review," or when the decision is "committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (a)(2); *see Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (explaining that "even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.").

Congress enacted section 1252(g) to specifically preclude judicial review of the discretionary decision to initiate removal proceedings, and the actions and decisions arising out of such decisions. *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483-85 (1999) (finding section 1252(g) also precludes review of the discretionary decision to *not* initiate removal proceedings). Furthermore, in *Heckler*, the Supreme Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." 470 U.S. 821, 832.

3:17-CV-01840-JM-(NLS)

Here, the INA specifically precludes review of the actions that Plaintiff challenges. Moreover, the challenged action, an individual DACA decision, falls squarely within that category of actions for which there is no law to apply, as it is a decision implicating prosecutorial discretion. *See Heckler*, 470 F.3d at 830; *see also Morales de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016) (noting that "the exercise of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to judicial intervention"); *accord Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) (explaining that "[i]n making immigration enforcement decisions, the executive considers a variety of factors"), *cert. denied*, 136 S. Ct. 900, (2016), *reh'g denied*, 136 S. Ct. 1250 (2016). Contrary to Plaintiff's arguments, Defendants' guidance does not curtail the well-recognized discretion with regard to deferred action decisions.

Additionally, the Court lacks jurisdiction over Plaintiff's constitutional claims because Plaintiff necessarily lacks a protected constitutional interest in the DACA termination process, because the ultimate relief he seeks – deferred action – is discretionary. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

## A. The INA Limits Review of Plaintiff's Claims which Arise from DHS's Decision to Commence and Adjudicate Plaintiff's Removal Proceedings.

Through the INA, as amended by the REAL ID Act of 2005 and codified at 8 U.S.C. § 1252(g), Congress explicitly eliminated judicial review over "any cause or claim by or on behalf of any alien . . . arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9; *cf. Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (rejecting contention that section 1252(g) applies only to discretionary decisions of the Secretary).

The fact that Plaintiff frames his claim as a challenge to a DACA determination rather than expressly requesting the enjoining of adjudication of his removal proceedings

is irrelevant because section 1252(g) precludes judicial review of "any" claim "arising" from "the decision or action" to adjudicate cases (not just express challenges to the adjudication itself). *See, e.g., Alcaraz v. INS*, 384 F.3d 1150, 1160-61 (9th Cir. 2004) (finding review of the reopening of removal proceedings, but not the administrative closure of proceedings, was barred from review as an action related to the decision to commence removal); *Botezatu v. INS*, 195 F.3d 311, 314 (7th Cir. 1999) (citing *AADC*, 525 U.S. at 944 (discussing the scope of section 1252(g) as including "various decisions . . . leading up to order consequent upon final orders of deportation.")).

To the extent Plaintiff's reply brief will likely reiterate arguments made in his Motion for Preliminary Injunction, the Court should reject, as contrary to section 1252(g), Plaintiff's contention that he is challenging the Government's decision-making process rather than the final decision itself. Dkt. No. 39-1 at 23.[3] Section 1252(g) is not limited to claims arising from the adjudication of cases nor is it limited to only discretionary actions. *Cf. Silva*, 866 F.3d at 940. Defendants disagree with the Court's prior citation to *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004), for the proposition that judicial review is preserved for purely legal conclusions. Dkt. No. 12 at 8. There, the Ninth Circuit held that section 1252(g) did not apply because "the gravamen of [the alien's] claim does not arise from the Attorney General's decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Hovsepian*, 359 F.3d at 1155 (9th Cir. 2004).[4] Additionally, *Colotl v. Kelly*, 261 F. Supp. 3d 1328 (N.D. Ga. June 12, 2017), is of no assistance here. There, the court noted that section 1252(g) eliminates

---

[3] Where Plaintiff has offered arguments in his brief in support of his motion for preliminary injunction [Dkt. No. 39-1] that address Defendants' arguments against his amended complaint [Dkt. No. 38], Defendants reference that motion in anticipation of Plaintiff's likely incorporation of those arguments in response to Defendants' arguments herein.

[4] *Hovsepian* considered a purely legal question preceding a discretionary decision. Here, however, the DACA SOP identifies threshold criteria for DACA consideration, but it does not mandate granting DACA if those threshold criteria are met. *See* DACA SOP Chapter 8 at 45 (April 2013 version) ("Individuals may be considered for DACA upon showing that they meet the prescribed guidelines . . ."), available at https://cliniclegal.org/sites/default/files/attachments/daca_sop_4-4-13.pdf (last visited Feb. 5, 2018).

1  "jurisdiction to review the government's ultimate discretionary determination as to
2  Plaintiff's DACA [ ]." *Colotl*, 261 F. Supp. 3d at 1339 (citations omitted).

3        Moreover, Plaintiff's claim that constitutional claims are preserved
4  notwithstanding section 1252(g) similarly fails. *See* Dkt. No. 39-1 at 23. On this point,
5  the Court's prior reliance on *Ramirez-Perez v. Ashcroft*, 336 F.3d 1001 (9th Cir. 2003), is
6  also misplaced. *See* Dkt. No. 12 at 8. There, the Ninth Circuit did not even consider
7  section 1252(g) and analyzed only the jurisdiction limitation statute at section
8  1252(a)(2)(B)(i) holding that "[w]hether the BIA's interpretation of the hardship standard
9  violates due process is not a "judgment regarding the granting of" cancellation of
11  removal relief." *Ramirez-Perez*, 336 F.3d at 1005. In contrast, the Ninth Circuit has held
12  that "a petitioner may not create the jurisdiction that Congress chose to remove simply by
13  cloaking [a claim] in constitutional garb." *See Torres-Aguilar v. INS*, 246 F.3d 1267,
14  1271 (9th Cir. 2001). And, even for a court to find that section 1252(g) does not preclude
15  review of constitutional claims, those claims must "not arise from 'a decision or Action
16  by the Attorney General to commence proceedings, adjudicate cases, or execute removal
17  orders against any alien,' but instead constitute 'general collateral challenges to
18  unconstitutional practices and policies used by the agency.'" *Walter v. Reno*, 145 F.3d
19  1032, 1052 (9th Cir. 1998) (quoting *McNary v. Haitian Refugee Cir., Inc*., 498 U.S. 479
20  (1991)). Rather, claims that fall within the limitations of section 1252(g) are not subject
21  to review, even if cast as constitutional claims. *See Sissoko v. Rocha*, 509 F.3d 947, 951
22  (9th Cir. 2007) (finding no jurisdiction over constitutional tort claim because the
23  plaintiff's detention arose from the decision to commence removal proceedings).[5]

24      
25  [5] In *Sissoko*, the Ninth Circuit distinguished between these types of claims and those raised in an earlier
Ninth Circuit case discussing 8 U.S.C. § 1252(g), *Wong v. United States*, 373 F.3d 952 (9th Cir. 2004). In
26  *Wong*, plaintiff's counsel expressly disclaimed any challenge to the execution of removal and explained
that her claims only implicated "actions other than that removal, or the commencement of proceedings . .
27  .," 373 F.3d at 964, for which the court held that the claims at issue in *Wong* did not implicate the agency's
prosecutorial discretion and did not pose a threat of "obstruction of the institution of removal proceedings
28  or the execution of removal orders . . . ." *Id*. at 970. *Wong* is distinguishable where Plaintiff is in removal

3:17-CV-01840-JM-(NLS)

1    Courts have held that section 1252(g) applies to bar jurisdiction over DACA

2    determinations. *See Garcia-Herrera v. Asher*, 585 F. App'x 439, 440 (9th Cir. 2014)

3    (holding under section 1252(g) that petitioner's challenge to ICE's decision not to delay

4    his removal proceeding pending the adjudication of his DACA request constituted a

5    challenge to ICE's decision to execute a removal order); *Vasquez v. Aviles*, 639 F. App'x

6    898, 901 (3d Cir. 2016) (finding no jurisdiction to review a denial of a DACA request

7    because "that decision involves the exercise of prosecutorial discretion not to grant a

8    deferred action."); *see also Vilchiz-Soto v. Holder*, 688 F.3d 642, 644 (9th Cir. 2012)

9    ("[W]e lack jurisdiction to review petitioners' contention that the agency abused its

11   discretion in denying the motion to reopen to seek prosecutorial discretion based on the

12   recent order of President Obama."); *Rodriguez v. Sessions*, No. 15-72487, 2017 WL

13   695192, at *1 (9th Cir. Feb. 22, 2017); *Fabian-Lopez v. Holder*, No. 11-71513, 540 F.

14   App'x 760, 761 n.2 (9th Cir. Apr. 29, 2013); *cf. Sanchez v. Holder,* No. 15CV0089-GPC

15   WVG, 2015 WL 4249446 (S.D. Cal. July 13, 2015) (district court lacked jurisdiction to

16   stay removal and make determination whether deferred action was warranted).

17   This recent authority is consistent with earlier case law interpreting the 1981

18   Operating Instructions, a previous policy that provided guidelines for the exercise of

19   deferred action.  That authority concluded that district courts lack jurisdiction to review

20   the district director's decision not to recommend deferred action. *Romeiro de Silva v.*

21   *Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985). Plaintiff ignores that holding and instead

22   relies on *Nicholas v. INS*, 590 F.2d 802 (9th Cir. 1979) for the purported reviewability

23   of an internal deferred action policy with "'express criteria' and 'periodic review of non-

24   priority status' [that] 'clearly and directly affects substantive rights,' including 'the ability

25   of an individual subject to its provisions to continue residence in the United States.'" Dkt.

26

27   _____

28   proceedings and DACA termination could have a direct result in his removal from the United States.

3:17-CV-01840-JM-(NLS)

No. 39-1 at 28, citing *Nicholas*, 590 F.2d at 807-08.[6] There, the Ninth Circuit held that the five express humanitarian factors in the 1978 Operating Instructions,[7] the effect of a grant of such non-priority status to provide an indefinite delay in deportation, and the directive nature of the language ("'In Every case'" where relief is appropriate, the District Director 'Shall recommend' deferred action category"), made it "obvious that this procedure exists out of consideration for the convenience of the petitioner, and not that of the INS." *Id*. at 806-07. While the Ninth Circuit considered periodic review an important factor, it conditioned its analysis in consideration that "the Instruction plainly contemplates a scheme where the status would preclude any deportation as long as the relevant humanitarian factors are still compelling, rather than being subject to termination at the convenience of the INS." *Id*. at 807.

In contrast to *Nicholas*, Romeiro de Silva's request for deferred action was denied after "[t]he INS district director considered each of these factors." *Romeiro de Silva*, 773 F.2d at 1023. The Ninth Circuit, however, acknowledged the weight of authority finding that deferred action determinations under the 1978 operating instructions unreviewable, and held that under the 1981 Operating Instructions "the district court lacked jurisdiction to review the district director's decision not to recommend deferred action status for Romeiro de Silva," because "it is no longer possible to conclude that [the instruction] is intended to confer any benefit upon aliens, rather than [to operate] merely for the INS's own convenience." *Id*. at 1024-25.

---

[6] Notably, even in *Nicholas*, the Court ultimately denied the appeal on Nicholas' claim to eligibility for non-priority status as defined in the INS's 1978 Operating Instructions because he could not meet his burden to show that the Government's decision "deviated from an established pattern without reason" notwithstanding the presence of humanitarian factors. 590 F.2d at 808. Nicholas's request was verbally denied, apparently without further explanation or process. *Id*. at 804.

[7] "When determining whether a case should be recommended for deferred action category, consideration should include the following: (1) advanced or tender age; (2) many years' presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States effect of expulsion; (5) criminal, immoral, or subversive activities or affiliations recent conduct." *Nicholas*, 590 F.2d at 806-807, citing 1978 INS Operating Instruction at 103.1(a)(1)(ii).

The Supreme Court's decision in *AADC* held that section 1252(g) applied to bar these same types of deferred action determinations. *AADC*, 525 U.S. at 483-87 ("At each stage the Executive has discretion to abandon the endeavor, and at the time IIRIRA was enacted the INS had been engaging in a regular practice (which had come to be known as "deferred action") of exercising that discretion for humanitarian reasons or simply for its own convenience."). There, the Government ended prior grants of deferred action by charging, and then pursuing deportation for only routine status violations against six of the eight plaintiffs. *Id*. at 474. Importantly, the Court held that aliens unlawfully in the United States and subject to deferred action had "no constitutional right to assert selective enforcement as a defense against his deportation," under the First or Fifth Amendments to the U.S. Constitution. *Id*. at 489.

Here, the similarities to both the policies and procedures addressed by the Ninth Circuit and Supreme Court are too strong for the Court to reason around Congress's clear intent. Plaintiff's claims are barred by section 1252(g) because he is asserting claims arising from the commencement of and adjudication of his removal proceedings. Because Plaintiff claims that it was improper for DHS to terminate his DACA because "ICE's litigation of removal proceedings for unlawful presence against a DACA recipient was not a valid basis for USCIS to terminate DACA under the SOP," and "removal from the country in the absence of any culpability would visit such grievous harm," Dkt. No. 38 at ¶¶ 136; 14 [of Count Three],[8] he is necessarily challenging the "commencement" and "adjudicat[ion]" of his ongoing removal proceedings. *See* 8 U.S.C. § 1252(g). Indeed, because the denial of DACA is a step "leading up to" a final order of removal, it is squarely within the scope of section 1252(g). *Id*. Plaintiff's effort to shroud his claims in procedural terms is further undone by his challenge to ICE's identification of Plaintiff as a removal priority and decision to pursue his removal because "[o]nly individuals who do

---

[8] Plaintiff's Amended Complaint restarts paragraph numbering with paragraph 1 under Count Three on page 39, following paragraph 173 under Count Two. *See* Dkt. No. 38.

3:17-CV-01840-JM-(NLS)

not qualify for DACA status may be considered enforcement priorities [based on the Kelly Memo]." Dkt. No. 38 ¶ 169. Finally, were the Court to find that a final removal against Plaintiff could not be executed based in some way on his claimed entitlement to DACA, then the issues raised here are certainly those for which this Court lacks jurisdiction.

Regardless of how Plaintiff frames the issue, section 1252(g) precludes judicial review of the Government's exercise of its prosecutorial discretion. Accordingly, the decisions of DHS to issue an NTA and place Plaintiff in removal proceedings, and thereby terminate DACA, and subsequent decision to terminate Plaintiff's DACA following advance notice and an opportunity to respond are not subject to judicial review, and the Court should reject Plaintiff's motion for preliminary relief. To hold otherwise would render section 1252(g) a dead letter because any individual could seek to enjoin or otherwise challenge the commencement of removal proceedings through this type of creative pleading.

To the extent that Plaintiff has any viable claims, the REAL ID Act, codified at 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), bars him from raising those claims in district court, even before a final order of removal issues. Section 1252(a)(5), entitled "[e]xclusive means of review," requires that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) provides "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added); *see, e.g., J.E.F.M. v. Lynch*, 837 F.3d 1026, 1038 (9th Cir. 2016) (district court lacked jurisdiction over challenge to adequacy of removal procedures, and instead court of appeals has authority to resolve questions of constitutional rights on review of a final removal order).

3:17-CV-01840-JM-(NLS)

Section 1252(b)(9) is "a clear statutory prescription against district court review" of challenges arising from removal proceedings for plaintiffs who had not yet received final orders of removal. *J.E.F.M.*, 837 F.3d at 1035-38. While the Court acknowledged that "an unrepresented minor in immigration proceedings poses an extremely difficult situation," it also found "these considerations cannot overcome a clear statutory prescription against district court review. Relief is through review in the court of appeals or executive or congressional action." *Id.* at 1036-38.[9]

Here, Plaintiff challenges the Secretary's discretion to terminate DACA following the decision to issue Plaintiff an NTA. *See* Dkt. No. 38 ¶¶ 136, 158. Thus, Plaintiff's challenge necessarily arises from "action taken or proceedings brought to remove an alien," for which district courts lack jurisdiction. Accordingly, this Court should find that Plaintiff cannot show either a likelihood of success or that the law and facts clearly favor his position. *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015).

**B. Judicial Review of Discretionary DACA Termination After Advance Notice and an Opportunity to Respond is also Barred under 5 U.S.C. § 701(a)(2).**

There is no judicial review under the APA of decisions that "courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (quoting 5 U.S.C. § 701(a)(2)). These decisions are typically unreviewable because there exists "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). This bar applies even when "the agency gives a 'reviewable' reason for otherwise unreviewable action."

---

[9] The Court's previous reliance on *Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007), is misplaced. Dkt. No. 31 at 7. *Singh* challenged ineffective assistance of counsel through habeas, and the court held that section 1252(b)(9) did not apply because the challenge was not tied to removal proceedings. *Singh*, 499 F.3d at 978-79. To interpret *Singh* as permitting district court challenges such as those raised here runs counter to Congressional intent, and would effectively excise the words "any action taken" from the statute. *See Aguilar*, 510 F.3d at 10; *cf. Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (an APA claim "challeng[ing] the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal" must be channeled through the petition for review process).

1   *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987) ("*BLE*"). The decisions

2   committed to executive discretion include "an agency's exercise of enforcement power,"

3   including resource allocation and overall priorities. *Chaney*, 470 U.S. at 831. As there is

4   "no meaningful standard against which to judge the agency's exercise of discretion" in

5   weighing these factors, an agency's exercise of enforcement powers is "presumed

6   immune from judicial review under § 701(a)(2)." *Id*. at 830, 832.

7        Just as "the decision whether or not to prosecute" presumptively "rests entirely in

8   [the prosecutor's] discretion," *United States v. Armstrong*, 517 U.S. 456, 464 (1996)

9   (citation omitted), an agency's decision to bring a civil enforcement action is generally

11   not open to judicial scrutiny. Considerations such as the *Chaney* factors are equally

12   present in enforcement decisions as in nonenforcement decisions. *See Chaney*, 470 U.S.

13   at 831; *see also Wayte v. United States*, 470 U.S. 598, 607-8 (1985) ("[T]he decision to

14   prosecute is particularly ill-suited to judicial review").

15        One form of that broad discretion is deferred action, a "discretionary and

16   reversible" decision to notify an alien that DHS has chosen not to seek his removal for a

17   specific period of time. *Arpaio v. Obama*, 797 F.3d 11, 17 (D.C. Cir. 2015). Like other

18   agency nonenforcement decisions, grants of deferred action rest on a complex balancing

19   of policy considerations that cannot serve as "meaningful standard against which to judge

20   the agency's exercise of discretion." *Chaney*, 470 U.S. at 831. The converse is equally

21   true: denials of deferred action are also committed to agency discretion. *See AADC*, 525

22   U.S. at 485 (treating "'no deferred action' decisions" as "discretionary determinations").

23   Because "[g]ranting an illegally present alien permission to remain and work in this

24   country" is fundamentally "a dispensation of mercy," there are "no standards by which

25   judges may patrol its exercise." *Perales v. Casillas*, 903 F.2d 1043, 1051 (5th Cir. 1990)

26   (INS's decision not to grant pre-hearing voluntary departures and work authorizations to

27   a group of aliens was non-justiciable). Thus, individual DACA terminations fall squarely

28   within that category of agency discretion for which judicial review is improper. *See*

*Chaney*, 470 F.3d at 830; *see also Morales*, 824 F.3d at 822 (explaining that the exercise of prosecutorial discretion is different from other types of agency action).

Here, Plaintiff is challenging DHS's exercise of its enforcement power, including specifically the factors it relied on, and argues that instead of seeking to remove him from this country, DHS should decide to continue to defer action with respect to him. *See, e.g.*, Dkt. No. 38 at ¶ 136 ("Mr. Gonzalez respectfully request[ed] that USCIS exercise its independent discretion in this case and continue its deferral of [his] removal."); *id.* at ¶ 13 ("Defendants' efforts to strip him of protection from removal from the only country he knows are unlawful and unconstitutional and must be set aside"). This is a classic challenge to DHS's exercise of its prosecutorial discretion. *See Chaney*, 470 U.S. at 831. There is no meaningful standard to judge whether DHS should continue to defer action as to Plaintiff and, instead, prioritize the removal of other aliens. *See id.*[10] Indeed, Plaintiff's tortured reading of the DACA SOP along with the Kelly Memo would render meaningless the specific termination ground that continuation of deferred action is not consistent with DHS's enforcement priorities. *See* Dkt. No. 38 at ¶¶ 40-42. Rather, this type of enforcement decision involves a balancing of factors, including factors as to how to allocate agency resources, that is committed to agency discretion by law. *See Chaney*, 470 U.S. at 831; *Armstrong*, 517 U.S. at 464. The question for DHS was not whether it *could* continue to exercise its discretion in favor of the Plaintiff, but rather whether it *should* have under the circumstances of this case. Because this type of discretionary determination is committed to DHS by law, this Court lacks jurisdiction to review Plaintiff's claims.

---

[10] It is irrelevant for this Court's jurisdiction that DHS has guidance regarding grants of deferred action under DACA. The existence of criteria that an agency is to consider is not enough to provide a meaningful standard of review, *see Pasquini v. Morris*, 700 F.2d 658, 659 (11th Cir. 1983), and, moreover, the exercise of prosecutorial discretion is not amenable to judicial review even when an agency has established procedures. *See Carranza, v. I.N.S.*, 277 F.3d 65, 72-3 (1st Cir. 2002); *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) (reversing a finding that a criminal defendant can force the Department of Justice to comply with its death penalty protocol); *Wayte*, 470 U.S. at 607-8.

1   Plaintiff can state no claim under the APA because USCIS's Decision fully

2   complied with its SOP and other policies, and the APA in general. First, USCIS's

3   Decision specifically quotes the SOP provision on which it is based. Dkt. No. 39-6 at

4   195. Second, USCIS's Decision demonstrates adherence to all the procedural steps in the

5   cited SOP guidelines: consultation with ICE; consideration of whether continuing DACA

6   is inconsistent with DHS's enforcement priorities; and USCIS's consideration of

7   Plaintiff's response and the agency's voluntary consideration of his supplemental

8   response to that NOIT.  *Id.* Following that review, USCIS found "that continuing to

9   exercise prosecutorial discretion to defer removal action against you is not consistent

11   with DHS's enforcement priorities. Therefore USCIS does not find that you merit a

12   favorable exercise of prosecutorial discretion and will not continue to defer DHS removal

13   action against you under DACA." *Id.* at 3.

14   Plaintiff, without citation, attempts to reconstruct the DACA SOP to argue that:

15   "DACA recipients who meet the program's objectively verifiable criteria—*i.e.*, have no

16   disqualifying criminal convictions and do not pose a threat to national security or public

17   safety—remain 'low priority cases.'" Dkt. No. 38 at ¶ 46. Plaintiff goes on to paraphrase

18   the various grounds for DACA termination discussed in the SOP, but omits the ground

19   applied to him: "Enforcement Priority." *Id.* at ¶¶ 54-60; *see also* Dkt. No. 39-4 at 79-81.

20   Notably, this DACA termination provision was in the August 2013 version of the SOP,

21   well before the Kelly Memo issued in February 2017. Accordingly, Plaintiff cannot

22   support his claim that "deeming him an 'enforcement priority' would be counter to (or an

23   unexplained reversal of) Defendants' yearslong [sic] policy of categorizing individuals

24   who meet the DACA eligibility criteria as 'low priority cases' in the absence of

25   'disqualifying criminal offenses.'" Dkt. No. 38 at ¶ 141. While Defendants maintain that

26   the operative DACA SOP allows for a fluid definition of enforcement priorities and that

27   nothing precludes Defendants from determining an individual is an enforcement priority

28   on a case-by-case basis, the Court need not even consider those arguments to find that

3:17-CV-01840-JM-(NLS)

Plaintiff cannot succeed here because Plaintiff's alleged role in an alien smuggling enterprise is clearly identified as an enforcement priority in USCIS's 2011 NTA guidance. *See* Dkt. No. 39-4 at 62.

Plaintiff next argues that "ICE's issuance of an NTA against him for nothing more than unlawful presence" is not "'a reasoned basis for terminating DACA.'" Dkt. No. 38 at ¶ 143 (citing *Inland Empire—Immigrant Youth Collective v. Duke*, No. EDCV 17–2048, 2017 WL 5900061, at *6-7 (C.D. Cal. Nov. 20, 2017) ("*IEIYC*")). While Defendants disagree with the court's grant of a preliminary injunction in *IEIYC*, it followed the automatic termination of DACA based on NTA issuance alone, which is no longer the case here. Moreover, Defendants' Termination makes clear that it is based on more than "ICE's issuance of an NTA against him for nothing more than unlawful presence." Dkt. No. 38 at ¶ 143. Rather, USCIS stated:

> USCIS does not rely solely on the ground listed in the charging document as it may not reflect all derogatory information and/or the assessment of whether or not you are considered an enforcement priority.

Dkt. No. 39-6 at 196. Accordingly, Plaintiff has not and cannot demonstrate that Defendants have ignored their own DACA termination policy.[11]

---

[11] Plaintiff also appears to argue that the DACA SOP requires a criminal conviction to support DACA termination, whereas the Kelly Memo prioritizes charged or suspected criminal conduct. Dkt. No. 39-1 at 20, citing Dkt. No. 39-6 at 208. However, even the provision that Plaintiff cites only supports a requirement that USCIS adjudicators investigate beyond a RAP sheet to ascertain whether a DACA requestor has actually been convicted of a crime. *Id.* Notably the same SOP provision that Plaintiff cites indicates that certain criminal conduct may render an individual "not eligible for consideration of DACA," but states that "the requestor's entire offense history can be considered along with other facts to determine whether, under the totality of the circumstances, he/she warrants an exercise of prosecutorial discretion." *Id.* at 204. Ultimately, the DACA SOP is silent as to the factors USCIS is to use in DACA termination decisions where an individual is determined to be an enforcement priority, and the DACA SOP and related guidance support that DACA may be terminated on a discretionary case-by-case basis even where a DACA recipient otherwise meets the guidelines. Dkt. No. 39-4 at 81; *id.* at 11 ("DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion.").

3:17-CV-01840-JM-(NLS)

Indeed, Plaintiff's arguments make clear that he is not challenging the process by which USCIS terminated his DACA, but he is instead challenging USCIS's ultimate decision of how to exercise its discretion – an action for which this Court lacks jurisdiction. Plaintiff's arbitrary and capricious analysis suffers from the same flaw as his argument about Defendants' compliance with the SOP – he concludes that "the automatic termination of his DACA status and EAD failed to adhere to the DACA SOP and USCIS Memo" Dkt. No. 38 at ¶ 17 [of Count Four],[12] but offers no cogent explanation why USCIS's Termination fails in this regard. Indeed, Plaintiff again states, without citation, that Defendants "decision to label Mr. Gonzalez an "enforcement priority" even though he has never been charged with or convicted of a crime is a violation of the DACA program's non-prioritization of immigrants without any criminal history and the APA's proscriptions against arbitrary and capricious action and unexplained policy changes" *Id.* at ¶ 10. However, where Plaintiff has not and cannot demonstrate that Defendants' discretion to determine that he is an enforcement priority is constrained by his lack of a conviction or public safety concern, his argument fails.

### C. Plaintiff Cannot State a Constitutional Claim because the Termination of DACA and Employment Authorization does not Implicate a Constitutional Interest.

Plaintiffs cannot have a protected constitutional interest in DACA because it purely discretionary. *See, e.g., Velasco-Gutierrez v. Crossland*, 732 F.2d 792, 798 (10th Cir. 1984) (holding that deferred action guidance "places no effective limitations on official discretion, and thus creates no protected liberty interest in deferred action"); *cf. Arpaio*, 797 F.3d at 17 (quoting DACA Memo for the proposition that "deferred action remains discretionary and reversible, and 'confers no substantive right, immigration status or pathway to citizenship.'").

---

[12] Plaintiff's Amended Complaint restarts paragraph numbering with paragraph 1 under Count Three on page 39, following paragraph 173 under Count Two. *See* Dkt. No. 38.

3:17-CV-01840-JM-(NLS)

The Supreme Court has held that, for due process purposes, a benefit "is not a protected entitlement" where "government officials may grant or deny it in their discretion." *Castle Rock*, 545 U.S. at 756. For Due Process purposes, statutes or regulations limit discretion only when they contain "'explicitly mandatory language'"— *i.e.*, "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 462–63 (1989) (citation omitted). Nor does the provision of certain procedures by an agency itself give rise to a federal constitutional dimension. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) ("[a] liberty interest . . . cannot be the right to demand needless formality. Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.").

Neither the constitution nor Congress provides an individual in unlawful status a protected interest in family reunification, living or working in the United States, or in discretionary relief from removal. *See De Mercado v. Mukasey*, 566 F.3d 810, 816 (9th Cir. 2009). *Garcia v. Holder*, No., 07-60271, 320 F. App'x 288, 290 (9th Cir. April 9, 2009); *Pilapil v. INS*, 424 F.2d 6, 11 (10th Cir. 1970), *cert denied*, 400 U.S. 908 (1970).[13] Nor can Plaintiff claim an entitlement in this case that creates a Constitutional interest. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *see also Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) (underscoring that aliens cannot claim a cognizable due process interest in discretionary immigration relief or benefits). Even a practice of "generously" granting a

---

[13] While Plaintiff cites *Morrissey v. Brewer*, 408 U.S. 471 (1972), to discuss "other enduring attachments of life," the extensions that Plaintiff argues for here conflict with the cited rulings.

3:17-CV-01840-JM-(NLS)

"wholly and expressly discretionary state privilege" does not create a legal entitlement to that benefit. *See Regents of Univ. of Cal. v. United States Dep't of Homeland Sec.* ("*Regents*"), No. C 17-05211 WHA, 2018 WL 339144, at *4 (N.D. Cal. Jan. 9, 2018) (citing G*erhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1020-21 (9th Cir. 2011)) ("A person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government.").[14]

The DACA policy and related guidance create no such mutually held expectation regarding the terms for termination, *id.*, nor do they contain "explicitly mandatory language," *Thompson*, 490 U.S. at 462–63. The policy is codified in no statute or regulation.[15] Its source—the DACA Memo—describes it as a "policy" for the "exercise of prosecutorial discretion." Dkt. No. 39-4 at 3; *see Omar v. McHugh*, 646 F.3d 13, 22 (D.C. Cir. 2011) (the "use of the word 'policy'"—"rather than a word such as 'right'— reinforces the conclusion that Congress did not intend to create an 'entitlement'"). And the agency's public guidance makes clear that, under DACA, deferred action "may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." Dkt. No. 39-4 at 5; *see also Arpaio*, 797 F.3d at 17 (noting that the grant of deferred action is discretionary).

---

[14] Plaintiff's reliance in his motion for preliminary injunction on cases that discuss violations of non-discretionary procedures in agency regulations are inapposite where deferred action and related employment authorization are discretionary concepts not tied to statute or regulation. *See* Dkt. No. 39-1 at 24-25 (citing *United States v. Raya-Vaca*, 771 F.3d 1195, 1203 & n.6 (9th Cir. 2014) (liberty interest arising from risk of removal on an expedited removal order, not the loss of something conferred by a discretionary policy)); *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012) ("An extraditee thus possesses a narrow liberty interest: that the Secretary comply with her statutory and regulatory obligations [to consider an extraditees' torture claim]."); *Singh v. Bardini*, No. 09-cv-3382, 2010 WL 308807, at *7 (N.D. Cal. Jan. 19, 2010) (addressing questions of regulatory procedures for asylum termination outside of removal proceedings).

[15] The only regulation that references deferred action, 8 C.F.R. § 274a.12(c)(14), long predates the DACA policy, and only allows aliens with deferred action to apply for employment authorization if they can demonstrate an economic need for employment.

Because DACA is discretionary and "may be terminated at any time, with or without" notice, Plaintiff necessarily cannot have a legitimate claim of entitlement to the favorable exercise of discretion regarding DACA. Even assuming *arguendo* that deferred action is viewed as a benefit, Plaintiff lacks any protected constitutional interest in deferred action. *See Castle Rock*, 545 U.S. at 756; *Velasco-Gutierrez*, 732 F.2d at 798.

Dated: February 23, 2018                    Respectfully submitted,

                                            CHAD A. READLER
                                            Acting Assistant Attorney General

                                            WILLIAM C. PEACHEY
                                            Director
                                            District Court Section
                                            Office of Immigration Litigation

                                            /s/ Jeffrey S. Robins
                                            JEFFREY S. ROBINS
                                            Assistant Director
                                            U.S. Department of Justice
                                            P.O. Box 868, Ben Franklin Station
                                            Washington, D.C. 20044
                                            (202) 616-1246
                                            jeffrey.robins@usdoj.gov

                                            *Attorneys for Defendants*

3:17-CV-01840-JM-(NLS)